Joyce ALDRICH, Petitioner-Respondent-Petitioner,

v.

LABOR AND INDUSTRY REVIEW COMMISSION,
Respondent-Co-Appellant,

BEST BUY STORES, L.P., Respondent-Appellant.

Supreme Court

*No. 2010AP1785. Oral argument March 7, 2012.*
*—Decided May 23, 2012.*

2012 WI 53

(Also reported in 814 N.W.2d 433.)

40

For the petitioner-respondent-petitioner there were briefs by *Peter M. Reinhardt, Bridget M. Finke* and *Bakke Norman, S.C.,* Menomonie and oral argument by *Peter M. Reinhardt.*

For the respondent-appellant there was a brief by *Amy Schmidt Jones, Steven A. Nigh* and *Michael Best & Friedrich LLP,* Milwaukee and oral argument by *Amy Schmidt Jones.*

For the respondent-co-appellant there was a brief by *David C. Rice,* assistant attorney general and *J.B. Van Hollen,* attorney general and oral argument by *David C. Rice.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is an employment discrimination case. The state and federal antidiscrimination statutes are remedial; they are designed to remedy problems identified by the state legislature and Congress.

¶ 2. The Wisconsin legislature has declared that it is the legislative intent "to protect by law the rights of all individuals to obtain gainful employment and to enjoy privileges free from employment discrimination."[1] The Wisconsin Fair Employment Act is designed to encourage and foster, to the extent practicable, the employment of all qualified individuals.

¶ 3. The United States Supreme Court has stated that all filings under the federal antidiscrimination statutes should be construed "to protect the employee's rights and statutory remedies;"[2] the federal procedures to claim employment discrimination "must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes."[3]

¶ 4. Joyce Aldrich, the petitioner, seeks review of a published court of appeals decision.[4] The court of appeals affirmed an opinion of the Wisconsin Labor and

[1] Wis. Stat. § 111.31(2) (2009–10). All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[2] *Federal Express Corp. v. Holowecki,* 552 U.S. 389, 406 (2008).

[3] *Holowecki,* 552 U.S. at 403.

[4] *Aldrich v. LIRC (Aldrich II),* 2011 WI App 94, 334 Wis. 2d 495, 801 N.W.2d 457.

43

Industry Review Commission (LIRC) dismissing Ms. Aldrich's state discrimination claims against her employer, Best Buy Stores, L.P. Ms. Aldrich claims that Best Buy discriminated against her on the basis of her age and gender.

¶ 5. Ms. Aldrich filed her claims first with the federal Equal Employment Opportunity Commission (EEOC). The claims later went to the Equal Rights Division (ERD) of the Wisconsin Department of Workforce Development by a procedure known as deferral. The claimed discriminatory conduct in the present case occurred nearly 10 years ago. Neither Ms. Aldrich nor Best Buy has had the merits of the claims heard by any court or any federal or state administrative agency. The decision today gives Ms. Aldrich and Best Buy an opportunity to be heard.

¶ 6. At this stage, the appeal raises the following two issues:

¶ 7. First, under the circumstances of the present case and the governing rules promulgated by the Department of Workforce Development, is Ms. Aldrich's complaint deemed filed with the ERD on the date that she filed documents with the EEOC that constituted a "charge" under federal law, or is it deemed filed with the ERD on the date that she filed documents with the EEOC that would have constituted a complaint under state law? Best Buy, LIRC, and the court of appeals take the former approach.

¶ 8. Second, is Ms. Aldrich barred by the doctrine of issue preclusion from litigating before the ERD the timeliness of her filing of the federal "charge" in the EEOC? In other words, may Ms. Aldrich argue before the ERD that her intake questionnaire was a timely filing of a federal "charge" under federal law such that the ERD must consider it a complaint timely filed under

state law? LIRC and the court of appeals applied issue preclusion and thus ruled that Ms. Aldrich's complaint was time-barred under the Wisconsin Fair Employment Act because the federal district court had determined that she did not file a timely "charge" with the EEOC under federal law.

¶ 9. For the reasons set forth, we do not definitively decide the first issue. At this stage, we rest our decision on the second issue. We conclude that Ms. Aldrich is not barred by the doctrine of issue preclusion from litigating before the ERD the timeliness of the filing of her federal discrimination "charge" with the EEOC. In other words, Ms. Aldrich may litigate whether the intake questionnaire filed with the EEOC qualifies as a "charge" under federal law. If it does, then under the approach taken by LIRC in this and prior cases, it was filed timely for federal and state purposes and Ms. Aldrich will be deemed to have filed a timely complaint with the ERD.

¶ 10. We conclude that applying the doctrine of issue preclusion in the present case does not comport with principles of fundamental fairness. We reach this decision based on the unique circumstances of Ms. Aldrich's case, the basis for the decision of the federal district court barring Ms. Aldrich's claim as untimely, the shift in the federal law relating to what documents constitute a valid federal "charge" (*see Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008)), and the Wisconsin legislative public policy of protecting the statutory rights of employees with discrimination claims.

¶ 11. Accordingly, we reverse the decision of the court of appeals and remand the matter to LIRC with instructions to remand the matter to the ERD to determine whether the intake questionnaire filed with

the federal EEOC in Ms. Aldrich's case satisfies the requirements of a charge under federal law so that the charge was filed timely within the 300–day federal statutory period.

¶ 12. Our opinion is structured as follows.

¶ 13. Part I provides background. Subpart I.A. (¶¶ 17–27) sets forth the relationship between the state administrative agency enforcing the Wisconsin Fair Employment Act and the federal administrative agency enforcing the federal antidiscrimination statutes, to give context to the present case. Subpart I.B. (¶¶ 28–64) provides the facts and procedural history of the present case.

¶ 14. Part II discusses the first issue raised by the parties—the meaning of Wis. Admin. Code § DWD 218.03(5)—and explains that we do not definitively decide the issue at this time. *See* ¶¶ 65–86.

¶ 15. Part III is our analysis of issue preclusion. Subpart III.A. (¶¶ 90–96) presents the standard of review; subpart III.B. (¶¶ 97–108) analyzes the legal elements of issue preclusion and concludes that they are satisfied in the present case; and subpart III.C. (¶¶ 109–149) analyzes whether applying issue preclusion comports with principles of fundamental fairness in the present case and concludes that it does not.

I

¶ 16. We first set forth the relationship between the state administrative agency enforcing the Wisconsin Fair Employment Act and the federal administrative agency enforcing the federal antidiscrimination statutes, to give context to the present case. We then lay out the facts and procedural history of Joyce Aldrich's discrimination claims.

## A

¶ 17. An employee who wishes to pursue a discrimination claim against an employer has the option of filing a claim under the Wisconsin Fair Employment Act with the Equal Rights Division (ERD) of the Wisconsin Department of Workforce Development or filing a claim under analogous federal statutes with the federal Equal Employment Opportunity Commission (EEOC). Because of the overlapping substance of the state and federal statutes, it is common for both the state and federal agencies to become involved at various points in investigating the same claim.

¶ 18. So common, in fact, that the Wisconsin ERD and the Milwaukee District Office of the federal EEOC are parties to a detailed "worksharing agreement." The stated purpose of the agreement is "to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State and Federal laws."

¶ 19. Under the worksharing agreement, the first agency to receive a discrimination claim ordinarily "defers" the claim to the other agency.

¶ 20. The use of the word "defers" is somewhat strange. It appears to mean that the administrative agency that first receives the claim notifies the other agency that a claim has been filed. The worksharing agreement dictates that the first agency to receive a claim will process the claim and the "other" agency takes no action initially. In other words, although the rules and the agreement refer to the first agency "deferring" a claim to the "other agency," it is actually the "other agency" (here the ERD) that "defers" to the agency in which the claim is first filed (here the EEOC).

¶ 21. The Wisconsin Department of Workforce Development has promulgated a rule governing the timeliness of complaints before the ERD in deferral situations:

> Wis. Admin. Code § DWD 218.03(5). **Date of filing of complaint deferred by another agency.** A complaint which is deferred to the [Department of Workforce Development] by a federal or local employment opportunity agency with which the department has a worksharing agreement complies with the requirements of sub. (3) and is considered filed when received by the federal or local agency.[5]

¶ 22. The time limit for filing a claim under both the state and federal statutes is 300 days from the date of the alleged discrimination. In the federal system, the document to be filed within the 300–day statutory period is referred to as a *"charge."* In the state system, the document to be filed is referred to as a *"complaint"* in the statutes as well as in the Wisconsin Department of Workforce Development rules.[6] A rule of the Department of Workforce Development sets forth the contents of a complaint, and by rule the Department agrees to provide "appropriate assistance in completing and filing complaints."[7]

---

[5] All citations to the Wisconsin Administrative Code are current through Wisconsin Administrative Register No. 673 (eff. Jan. 15, 2012). The language of the relevant rules has not changed since Ms. Aldrich's demotion.

[6] *See, e.g.,* Wis. Stat. § 111.39(1); Wis. Stat. § 111.375; Wis. Admin. Code § DWD 218.03.

[7] Wisconsin Admin. Code § DWD 218.03 provides in part as follows:

> **(3) Form and content of complaint.** A complaint shall be written on a form which is available at any division office or on any form acceptable to the department. Each complaint shall be signed by the person filing the complaint or by the person's duly autho-

¶ 23. According to LIRC, under Wis. Admin. Code § DWD 218.03(5), set forth above, in deferral situations the document that constitutes a federal "charge" automatically complies with the Department rules governing the form and content of a complaint for purposes of the Wisconsin Fair Employment Act and is considered filed with the ERD when received by the federal EEOC.

¶ 24. The formal requirements for a federal "charge"[8] and for a state complaint differ somewhat. The requirements for both are minimal, in recognition

rized representative. The signature constitutes an acknowledgment that the party or the representative has read the complaint; that to the best of that person's knowledge, information and belief the complaint is true and correct; and that the complaint is not being used for any improper purpose, such as to harass the party against whom the complaint is filed. Each complaint shall contain all of the following information:

(a) The name and address of the complainant.

(b) The name and address of the respondent.

(c) A concise statement of the facts, including pertinent dates, constituting the alleged act of employment discrimination, unfair honesty testing or unfair genetic testing.

(4) **Assistance by the department.** The department shall, upon request, provide appropriate assistance in completing and filing complaints.

[8] *See, e.g.,* 29 C.F.R. § 1601.12 Contents of charge; amendment of charge:

(a) Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

of the fact that many complainants proceed without attorneys and the fact that the antidiscrimination laws are remedial in nature.

¶ 25. As noted above, in the state system, the Department of Workforce Development provides "appropriate assistance in completing and filing complaints." In the federal system, the EEOC is involved in the filing as well, but rather than merely providing assistance when necessary, it appears that the EEOC investigators are responsible in all cases for converting the information from the intake questionnaire completed by the complainant into a "charge."

¶ 26. The present case illustrates that although a complainant may provide information to the EEOC timely, the EEOC does not always file the "charge," which is drafted by an EEOC investigator and approved by the complainant, until after the 300–day statutory

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

time limit has passed. LIRC advises that any delay by the investigator in preparing a "charge" for filing does not affect the timeliness of the "charge" when the intake questionnaire or other document filed with the EEOC and used by the EEOC investigator in preparing the "charge" may be deemed a "charge" under federal law.[9]

¶ 27. With this description of the worksharing arrangement between the state and federal agencies and the Wisconsin Department rules, we turn to explain what happened with Ms. Aldrich's discrimination claims against Best Buy.

B

¶ 28. The merits of Ms. Aldrich's age and gender discrimination claims are not before the court and have not yet been litigated before any agency or court. We set forth a limited account of her allegations as background, and we set forth her attempts to have her claims heard on the merits by either the EEOC or the ERD.

¶ 29. Ms. Aldrich began work at Best Buy in 1987 and earned a number of promotions over the years. In March of 2003 she was demoted. Ms. Aldrich alleged that several male managers were not demoted even though the reasons for her demotion applied equally to them. She also alleged that younger, male employees received vacation that she had requested, took demotions without pay cuts, and made comments about her age.

¶ 30. After her demotion, Ms. Aldrich communicated with the federal EEOC in Milwaukee to inquire about filing a discrimination claim against Best Buy.

---

[9] Brief of Labor and Industry Review Commission at 30–31.

During a brief conversation, an EEOC employee told her that the EEOC would send paperwork to her and that when she completed the paperwork and sent it back to the EEOC, her claim would be filed.

¶ 31. Ms. Aldrich received two documents from the federal EEOC in late March or early April of 2003, a "Basic Questionnaire" and a "Charge Questionnaire." We will refer to both these documents together as the intake questionnaire.

¶ 32. The Basic Questionnaire asked for information about Ms. Aldrich's employer and Ms. Aldrich's employment history, including the names of her supervisors, whether she had ever been promoted, and whether she had received any negative evaluations. It also asked her to describe the discriminatory actions that were the basis of her claim and to provide the names of the persons involved and the dates. Additionally, it asked Ms. Aldrich to provide information about how other employees in "very similar circumstances" were treated and to provide the names of any witnesses.

¶ 33. The Charge Questionnaire asked for Joyce Aldrich's full name, address, telephone number, age, sex, and race. It included a section entitled "Those actions that you wish to include in the charge," which asked for the dates of discrimination, the names and job titles of individuals who discriminated against Ms. Aldrich, a description of the discrimination, and a description of the reasons the employer gave for its actions against Ms. Aldrich.

¶ 34. Ms. Aldrich completed the two questionnaires. She signed both under penalty of perjury. The EEOC received Ms. Aldrich's completed intake questionnaire on August 27, 2003, with approximately one-half of the 300–day time limit yet to expire. Upon receipt of the intake questionnaire, the EEOC assigned

a 2003 EEOC charge number to Ms. Aldrich's case and assigned the case to Wendy Martin, one of its investigators.

¶ 35. On August 29, 2003, the EEOC investigator sent a letter to Ms. Aldrich explaining the need for additional information to draft the charge. Upon receiving the letter, Ms. Aldrich called the EEOC investigator and provided the requested information.

¶ 36. At least twice during the fall of 2003, Ms. Aldrich communicated with the federal EEOC investigator to check on the status of her case. In December, the EEOC investigator informed Ms. Aldrich that the case had been transferred to Lili Llanas, another EEOC investigator.

¶ 37. Ms. Aldrich spoke to this second EEOC investigator once and answered additional questions in late December or early January. Sometime in January, Ms. Aldrich received a draft of a charge from the second investigator. According to Ms. Aldrich, the draft contained several inaccuracies. In response, Ms. Aldrich called the second investigator and also sent her a letter that included "Corrections to be made on Charge of Discrimination" and "More Charges of Discrimination."

¶ 38. Ms. Aldrich's letter provided information on a variety of health problems she endured during the fall and winter of 2003, including foot surgery, surgery to remove a mass from her colon, headaches, back pain, and a mild heart attack. Ms. Aldrich explained that multiple doctors told her that stress was to blame for her health problems and that she should not return to Best Buy. In her letter, Ms. Aldrich told the second investigator that she gave her written separation notice to Best Buy on January 26, 2004.

¶ 39. In late January or early February 2004, Ms. Aldrich received a revised draft of the charge from the

second EEOC investigator. It incorporated Ms. Aldrich's corrections but did not include her claim of constructive discharge.

¶ 40. Ms. Aldrich signed the charge on February 4, 2004, and the federal EEOC received the charge on February 10, 2004. Pursuant to its worksharing agreement with the ERD, the federal EEOC transmitted the charge to the ERD on February 17, 2004, and notified the ERD that the EEOC would initially process the case. The ERD received the "charge" and the EEOC's letter on February 18, 2004.

¶ 41. On March 11, 2004, the ERD notified the parties that it would take no action while the EEOC investigated because the worksharing agreement dictates that the claim is initially processed by the first agency to receive it.

¶ 42. Ms. Aldrich was not represented by an attorney from March of 2003 through February of 2004.

¶ 43. On January 14, 2005, the EEOC issued a "Dismissal and Notice of Rights," notifying Ms. Aldrich that the EEOC was closing its investigation of her case because it could not determine, based on her charge, that Best Buy had violated the applicable antidiscrimination statutes. The notice indicated that Ms. Aldrich could bring a suit in federal court within 90 days of receiving the dismissal notice to challenge the EEOC's dismissal of her claim.

¶ 44. On March 3, 2005, the ERD sent Ms. Aldrich a letter advising her that it would conduct an independent investigation of her case if she submitted a written request by March 23, 2005. Ms. Aldrich requested an independent investigation by the ERD in a letter dated

March 16, 2005,[10] which was received by the ERD on March 21, 2005.

¶ 45. In April 2005, Ms. Aldrich also exercised her right to file a civil action in the United States District Court for the Western District of Wisconsin, seeking review of the EEOC's dismissal of her discrimination claims. As a result, the ERD held its investigation in abeyance.

¶ 46. In her action before the federal district court, Ms. Aldrich alleged that her March 2003 demotion was discriminatory and that she was constructively discharged in January 2004. Best Buy moved for summary judgment, claiming that Ms. Aldrich's charge was time-barred because it was received by the EEOC on February 10, 2004, more than 300 days after her March 2003 demotion. Ms. Aldrich argued to the federal district court that the intake questionnaire she submitted on August 27, 2003 constituted a valid charge under federal law and was within the 300–day statutory time period.

¶ 47. In a decision that predated the United States Supreme Court decision in *Federal Express Corp. v. Holowecki,* 552 U.S. 389 (2008), the federal district court granted Best Buy's motion for summary judgment and dismissed Ms. Aldrich's claims.[11]

¶ 48. The federal district court rested its holding on *Perkins v. Silverstein,* 939 F.2d 463 (7th Cir. 1991). In that case, the Seventh Circuit Court of Appeals declined to treat an intake questionnaire as a federal charge because the EEOC investigator had informed the com-

---

[10] The letter was accidentally dated March 16, 2004 rather than 2005.

[11] *Aldrich v. Best Buy,* No. 05–C–226–S, slip op. (W.D. Wis. Sept. 21, 2005).

plainant that the intake questionnaire contained insufficient information and that no further action would be taken on the basis of the questionnaire.[12]

¶ 49. Because the first EEOC investigator sent Ms. Aldrich a letter requesting further information in order to complete the charge, the federal district court concluded that Ms. Aldrich's case was indistinguishable from *Perkins.* The federal district court was unmoved by the fact that Ms. Aldrich timely completed the intake questionnaire, promptly responded to the request for additional information, and called the EEOC on a number of occasions to check on the status of her case. It was apparently irrelevant to the federal district court that Ms. Aldrich was dependent on the actions of the EEOC investigators to complete the filing of her charge, that months passed while Ms. Aldrich waited for the EEOC investigators to draft her charge, that her case was switched from one EEOC investigator to another, and that the final delay occurred because the first draft completed by the EEOC investigator was unsatisfactory.[13]

¶ 50. Rather than appeal the federal district court's decision to the Seventh Circuit Court of Appeals, Ms. Aldrich requested that the ERD recommence its independent investigation. On June 6, 2006, the ERD issued an initial determination, finding probable cause to believe that Best Buy violated the Wisconsin Fair Employment Act. Thus, Ms. Aldrich's case was sched-

---

[12] *Perkins v. Silverstein,* 939 F.2d 463, 470 (7th Cir. 1991).

[13] The federal district court also granted summary judgment on Ms. Aldrich's constructive discharge claim because it was not included in the charge that the EEOC received on February 10, 2004, and therefore Ms. Aldrich had failed to exhaust her administrative remedies with respect to that claim.

uled for a hearing on the merits before an administrative law judge (ALJ).

¶ 51. Best Buy moved the ALJ to dismiss the proceeding on the basis of claim preclusion. The ALJ granted Best Buy's motion, concluding that the federal district court action satisfied the elements of claim preclusion. LIRC affirmed. On certiorari review, the circuit court reversed LIRC's decision.

¶ 52. In a published decision, *Aldrich v. Labor & Industrial Review Commission* (*Aldrich I*), 2009 WI App 63, 310 Wis. 2d 796, 751 N.W.2d 866, the court of appeals affirmed the circuit court's reversal of the LIRC decision dismissing Ms. Aldrich's WFEA claim against Best Buy. The court of appeals concluded that *claim* preclusion could not bar Ms. Aldrich's state discrimination claims because "[t]he exclusive means of asserting a [Wisconsin Fair Employment Act] claim is through the Department of Workforce Development's Equal Rights Division" and Ms. Aldrich, therefore, could not have litigated her Wisconsin Fair Employment Act claims in the federal court action.[14]

¶ 53. On remand, Best Buy again moved the ERD to dismiss Ms. Aldrich's claim before it. Best Buy's second motion to dismiss asserted that Ms. Aldrich's claims were untimely under the applicable rules adopted by the Department of Workforce Development under the Wisconsin Fair Employment Act.

¶ 54. Best Buy contended that under Wis. Admin. Code § DWD 218.03(5), quoted above, Ms. Aldrich's *complaint* was deemed filed with the ERD when Ms. Aldrich's *"charge"* was received by the EEOC. Best Buy asserted that *issue* preclusion barred Ms. Aldrich from

---

[14] *Aldrich v. LIRC* (*Aldrich I*), 2008 WI App 63, ¶ 9, 310 Wis. 2d 796, 751 N.W.2d 866.

arguing before the ERD that her intake questionnaire constituted a "charge" under federal law because the federal district court had already decided that Ms. Aldrich's "charge" was a later document that was not received by the EEOC until February 10, 2004, more than 300 days after the alleged discrimination.

¶ 55. The ALJ granted Best Buy's motion to dismiss Ms. Aldrich's claim. The ALJ cited Wis. Stat. § 111.39(1), which provides, in relevant part, that "[t]he department may receive and investigate a complaint . . . if the complaint is filed with the department no more than 300 days after the alleged discrimination . . . occurred." The ALJ then explained that "[w]hile the ERD generally considers the first written contact alleging discrimination to be the date of filing, . . . this situation involves deferral and not a case that was first filed with the ERD." According to the ALJ, in a deferral situation, Wis. Admin. Code. § DWD 218.03(5) applies and "is construed to mean that the 'Charge of Discrimination' . . . that was received at the EEOC on February 10 of 2004 is deemed by the ERD to be a complaint that was filed on February 10 of 2004 even though it was not actually received at the ERD until February 18 of 2004."

¶ 56. The ALJ stated that "the federal court determined that February 10 of 2004 was the date of filing [with the EEOC] and rejected [Ms. Aldrich's] argument that August 27 of 2003 should be considered the date of filing [with the EEOC]." Consequently, the ALJ concluded that Ms. Aldrich would be precluded from relitigating the issue of when her "*charge*" was filed with the EEOC.

¶ 57. The ALJ did note that issue preclusion may be applied only if it comports with "fundamental fairness" and cited the five factors that are ordinarily considered to aid this determination. Then the ALJ con-

cluded, without reference to the fundamental fairness factors, that "[b]ased on the doctrine of issue preclusion, the determination of the U.S. District Court that the Complainant's 'Charge of Discrimination' was filed with the EEOC on February 10 of 2004 (and not on August 27 of 2003) must be accepted." With respect to Ms. Aldrich's constructive discharge claim, the ALJ concluded that it was untimely because it was not included in the charge that the EEOC received on February 10, 2004.

¶ 58. Ms. Aldrich petitioned LIRC for review of the ALJ's decision, and LIRC affirmed.[15] As we explain below, it is LIRC's decision that we review in the present case.

¶ 59. LIRC affirmed the ALJ's interpretation of Wis. Admin. Code § DWD 218.03(5). LIRC stressed that it has consistently concluded that a complaint deferred to the ERD from the EEOC (where it was first filed) is deemed filed with the ERD on the date the complainant satisfies the filing requirements of a "charge" under federal law.[16]

¶ 60. LIRC then affirmed the ALJ's decision to apply issue preclusion and bar Ms. Aldrich from relitigating the issue of whether her intake questionnaire constituted a "charge" under federal law. LIRC considered the five fundamental fairness factors in issue preclusion and concluded that none was implicated in the present case. Accordingly, LIRC concluded that "Aldrich's demotion claim must be dismissed as untimely."

---

[15] *Aldrich v. Best Buy,* ERD No. CR200400999 (LIRC, May 21, 2009).

[16] LIRC cited *Keup v. Mayville Products,* ERD No. 9302193, (LIRC, June 22, 1995), and *Mozden v. Brakebush Brothers, Inc.,* ERD No. CR200600005 (LIRC, Mar. 30, 2007).

¶ 61. Lastly, LIRC affirmed the ALJ's determination that Ms. Aldrich's constructive discharge claim was not timely filed because it was never filed directly with the ERD and the federal court determined that it was not included in a timely charge filed with the EEOC.

¶ 62. On certiorari review for the second time, the circuit court reversed LIRC for a second time.[17] The circuit court interpreted *Aldrich I* to "tacitly suggest[] issue preclusion is not available to LIRC and Best Buy, Inc. in this case." The circuit court believed "it was the intention of the Court of Appeals that Joyce Aldrich's case would go back to the Equal Rights Division for an actual evidentiary hearing on her underlying substantive claim."

¶ 63. In a published decision, the court of appeals reversed the circuit court and remanded with directions to reinstate LIRC's decision.[18] First, the court of appeals affirmed LIRC's interpretation of Wis. Admin. Code § DWD 218.03(5), concluding that in a deferral situation like the present case, a complaint is deemed filed with the Wisconsin ERD on the date the EEOC receives a federal "charge" of discrimination.[19] Second, the court of appeals affirmed LIRC's decision to apply issue preclusion and bar Ms. Aldrich from relitigating the issue of whether her intake questionnaire constituted a charge under federal law.

¶ 64. This court accepted Ms. Aldrich's petition for review.

---

[17] *Aldrich v. LIRC,* No. 09CV518, unpublished order (Eau Claire County Cir. Ct. June 9, 2010).

[18] *Aldrich v. LIRC* (*Aldrich II*), 2011 WI App 94, 334 Wis. 2d 495, 801 N.W.2d 457.

[19] *Aldrich II,* 334 Wis. 2d 495, ¶¶ 14–16.

## II

¶ 65. We turn to the first question the parties present: In a deferral situation like the present case, under the applicable Department of Workforce Development rules, is a complaint deemed filed with the ERD on the date that the complainant filed documents with the EEOC that constituted a "charge" under federal law, or is it deemed filed on the date that the complainant filed documents with the EEOC that would have constituted a "complaint" under state law? To put it another way, if the intake questionnaire Ms. Aldrich filed with the EEOC would have qualified as a complaint under state law, could Ms. Aldrich be deemed to have timely filed a complaint under the Wisconsin Fair Employment Act even if the ERD did not receive the documents from the EEOC until after the 300–day statutory period expired, or must Ms. Aldrich establish that the intake questionnaire constituted a "charge" under federal law?

¶ 66. Much of the parties' dispute has centered around Wis. Admin. Code § DWD 218.03(5), discussed above, which governs the timeliness of a claim that was initiated with an agency with which the ERD has a worksharing agreement. Wisconsin Admin. Code § DWD 218.03(5) is entitled "Date of filing of complaint deferred by another agency," and it reads as follows:

> A complaint which is deferred to the department by a federal or local employment opportunity agency with which the [Department of Workforce Development] has a worksharing agreement complies with the requirements of sub. (3) and is considered filed when received by the federal or local agency.

¶ 67. Because Wis. Admin. Code § DWD 218.03(5) deems a complaint filed with the ERD when it is

61

received by the federal agency (the EEOC) or a local agency, it creates an exception to the general rule that a complaint is deemed filed on the date it is physically received by the ERD.[20] The parties dispute the meaning of the rule. Neither party's interpretation fits comfortably with the text of the rule.

¶ 68. Best Buy and LIRC argue that Wis. Admin. Code § DWD 218.03(5) uses the word "complaint" generically to refer both to federal "charges" and to any discrimination claims filed in local agencies; "complaint" as used in the rule refers to the pleading (whatever it is called) "which is deferred" by another agency to the ERD.

¶ 69. Furthermore, Best Buy and LIRC read the word "deferred" to mean "sent." In other words, Best Buy and the LIRC interpret the rule to mean that a pleading must actually be sent from the EEOC to the ERD to qualify as a "complaint which is deferred."

¶ 70. Best Buy's and LIRC's interpretation of the words "complaint" and "deferred" in the rule is not a natural reading of these words.

¶ 71. In the present case, Best Buy argues that the only document the ERD "received" was the "charge" that the EEOC received on February 10, 2004. They acknowledge that Wis. Admin. Code § DWD 218.03(5) creates an exception to the physical receipt requirement, and thus argue that under the deferral provision, Ms. Aldrich's complaint should be deemed filed with the ERD on February 10, 2004.[21]

---

[20] *See* Wis. Admin. Code § DWD 218.02(6) (" 'Filing' means the physical receipt of a document.").

[21] Wisconsin Stat. § 111.39(1) provides that the ERD may process a complaint only if that complaint "is filed with the department [of workforce development, of which ERD is a

¶ 72. In sum, according to Best Buy and LIRC, in a deferral situation like the instant case, only a "charge" filed timely with the EEOC according to federal law is deemed a complaint received timely by the ERD.

¶ 73. This interpretation—that a state complaint is deemed filed when the federal agency receives documentation that constitutes a "charge" under federal law—is supported by LIRC case law.

¶ 74. For example, in *Keup v. Mayville Metal Products,* ERD No. 9302193 (LIRC, June 22, 1995), the complainant sent a questionnaire to the federal EEOC well within the 300–day time limit, but it was not converted into a formal charge until after the 300–day time limit had expired. The EEOC evidently was not concerned with, or was not alerted to, the potential untimeliness. Nevertheless, the federal EEOC terminated its investigation after conciliation efforts failed.[22]

¶ 75. The ERD picked up the investigation in *Keup.* The ERD dismissed the *Keup* complaint on the ground that the complaint had been received more than 300 days of the alleged discrimination. On review, the LIRC reversed the ERD. The LIRC analyzed *federal law,* including *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir. 1988), and determined that the complainant's intake questionnaire satisfied the charge-filing requirements under federal law. Because the initial questionnaire fulfilled the federal requirements of a charge and was timely, according to LIRC it would be deemed timely

division] no more than 300 days after the alleged discrimination . . . ." The rules define "filing" to mean "the physical receipt of a document." Wis. Admin. Code § DWD 218.02(6).

[22] According to *Keup,* this was the EEOC's standard procedure at the time.

received as a complaint by the state agency.[23] The case was remanded for further proceedings before the ERD.[24]

¶ 76. *Keup* addressed the question whether an intake questionnaire can constitute a federal "charge" under federal law. With respect to this point, LIRC's brief advises that any delay by the investigator in preparing a "charge" for filing does not affect the timeliness of the "charge" under federal law when the intake questionnaire or other document filed with the EEOC and used by the EEOC investigator in preparing the "charge" may be deemed a "charge" under federal law.[25]

¶ 77. *Keup* did not address the first issue presented in the instant case, namely whether an intake

[23] In contrast to the present case, there had been no determination by the federal agency or a federal court regarding the timeliness of the complainant's federal charge.

[24] *Keup*'s reasoning was followed in *Mozden v. Brakebush Brothers Inc.*, ERD No. CR200600005 (LIRC, Mar. 30, 2007). In *Mozden,* the LIRC stated that "because a charge received by the EEOC is also deemed to be received by the state agency with which the EEOC has a worksharing agreement, including the Wisconsin ERD, the date on which the charge was received by the EEOC will constitute the filing date for purposes of the Wisconsin Fair Employment Act."

The *Keup* and *Mozden* cases were followed by LIRC in the *Aldrich* case: "[I]f Aldrich's claim of discrimination was not timely received in the federal forum then it would not be considered timely received by the ERD. Both *Keup* and *Mozden* thus stand for the proposition that, for an intake questionnaire to stop the statute of limitations under the WFEA, the complainant must show that the intake questionnaire constituted a charge under federal law." *Aldrich v. Best Buy, Inc.,* ERD No. CR200400999 (LIRC, May 21, 2009).

[25] Brief of Labor and Industry Review Commission at 30–31.

questionnaire that fulfills the requirements of a state complaint (but does not constitute a "charge" under federal law) and was filed within the 300–day statutory period constitutes a complaint under the Wisconsin Fair Employment Act that satisfies the 300–day requirement under state law.

¶ 78. The interpretation and application of the rule proposed by Best Buy and LIRC is at odds with the text of the rule. Under DWD § 218.03(5), *complaints* deferred from the EEOC to the Wisconsin ERD automatically comply with the form and content requirements of state law. But under the worksharing arrangement, the EEOC *charge,* not a complaint, is deferred. Also, interpreting the word "deferred" to mean "sent" is contrary to ordinary usage.

¶ 79. Ms. Aldrich also focuses on the words "complaint" and "deferred" in the statute and Wis. Admin. Code § DWD 218.03(5). She argues that Best Buy and LIRC discard the word "complaint" and replace it with the word "charge." She asserts that any document received by the federal EEOC that satisfies the minimal form and content requirements for a *complaint* under state law should be deemed a "complaint" filed with the Wisconsin ERD when it is received by the federal EEOC.

¶ 80. Ms. Aldrich argues that the word "deferred" in Wis. Admin. Code § DWD 218.03(5) does not require any particular pleading to actually be sent to the ERD by the other agency. Rather, Ms. Aldrich contends that any pleading received by the other agency that would qualify as a complaint under state law is deemed filed with the ERD when it is received by the other agency. Nothing in the administrative rules, according to Ms. Aldrich, addresses when, or even if, a complaint initially filed with the EEOC must be physically received by the

ERD in order to satisfy the 300–day statutory rule. According to Ms. Aldrich, her intake questionnaire satisfies the state complaint requirements, should be deemed her complaint for purposes of her state claims, and should be deemed filed with the ERD on August 27, 2003, well within the 300–day statutory period.

¶ 81. Ms. Aldrich's argument resting on the intake questionnaire is difficult to square with Wis. Stat. § 111.39(1), which requires that a complaint be filed with the ERD—not the EEOC—to stop the running of the Wisconsin Fair Employment Act 300–day statutory period, and with Wis. Admin. Code § DWD 218.02(6), which defines "filing" to mean the physical receipt of a document. Also, under Wis. Admin. Code § DWD 218.03(5), it is a "complaint which is deferred" that will automatically comply with the form and content requirements for a state complaint.

¶ 82. We have serious reservations about both Best Buy's and LIRC's proposed interpretation of Wis. Admin. Code § DWD 218.03(5) on the one hand and Ms. Aldrich's on the other hand. We are hesitant to adopt either interpretation when it is difficult to square either with the text of the rule. We are also hesitant to upset, on this record, LIRC's interpretation of the rule in the context of the complex and longstanding worksharing agreement between the EEOC and the ERD.

¶ 83. LIRC argued in its brief and at oral argument that it would cause practical and administrative difficulties if the court accepted Ms. Aldrich's interpretation of Wis. Admin. Code § DWD 218.03(5). At a glance, it is not obvious why it would be more difficult for the ERD to scrutinize an EEOC file to determine whether documents filed earlier than the "charge" satisfy the complaint requirements under state law than it is for the ERD to scrutinize an EEOC file to determine

whether documents filed earlier than the "charge" satisfy the "charge" requirements under federal law, as it did in *Keup*.

¶ 84. Nonetheless, we take it seriously when an administrative agency with extensive experience in processing discrimination claims warns us that a particular interpretation of a rule or statute would have significant practical consequences that involve its longstanding relationships with a federal agency and local agencies.

¶ 85. At this stage of the present litigation, we need not and do not address the question whether, under the deferral circumstances of the present case, a complaint is deemed filed with the ERD on the date that the complainant filed documents with the EEOC that constituted a "charge" under federal law, or whether it is deemed filed with the ERD on the date that the complainant filed documents with the EEOC that would have qualified as a complaint under state law. That issue is left for decision on another day.

¶ 86. Instead we turn to the second issue in the case, namely whether Ms. Aldrich may litigate before the ERD the timeliness (under federal law) of her filing of the federal "charge" in the EEOC.

## III

¶ 87. We must determine whether issue preclusion bars Ms. Aldrich from arguing that her intake questionnaire constituted a federal "charge" that was timely filed as a matter of federal law. In other words, does the determination of the federal district court that the intake questionnaire filed with the EEOC did not qualify as a "charge" under federal law preclude Ms. Aldrich (under the doctrine of issue preclusion) from litigating this question anew before the ERD?

67

¶ 88. The doctrine of issue preclusion, formerly known as collateral estoppel, is designed to limit the relitigation of issues that have been actually litigated in a previous action. The burden is on the party asserting issue preclusion, here Best Buy, to establish that it should be applied.[26]

¶ 89. We first discuss the standard of review of LIRC's decision that issue preclusion applies. We then apply a two-step analysis: "(1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair."[27]

A

██ ██

¶ 90. When this court reviews a case that was initially decided by an administrative agency, it reviews the decision of the agency, not that of the court of appeals or circuit court.[28] We must determine the standard for reviewing LIRC's conclusion that the doctrine of issue preclusion applies in the present case.

¶ 91. The application of issue preclusion involves questions of law, and the "fundamental fairness" analysis also involves questions of fact, policy, and discre-

[26] *See Paige K.B. v. Steven G.B.,* 226 Wis. 2d 210, 219–25, 594 N.W.2d 370 (1999).

[27] *Estate of Rille v. Physicians Ins. Co.,* 2007 WI 36, 300 Wis. 2d 1, ¶ 36, 728 N.W.2d 693.

[28] *Racine Harley-Davidson, Inc. v. State Div. of Hearings & Appeals,* 2006 WI 86, ¶ 8 n.4, 292 Wis. 2d 549, 717 N.W.2d 184.

68

tion.[29] The court has quoted with approval the idea that "[t]he availability of collateral estoppel [issue preclusion] is a mixed question of law and fact in which legal issues predominate."[30]

¶ 92. Questions of law are ordinarily determined by a court, rather than an administrative agency, although a court may accord deference to an agency's ruling on a question of law, such as statutory interpretation. It is a court's responsibility to decide questions of law and determine whether deference is due and what level of deference is due an administrative agency's determination of a question of law.[31]

¶ 93. In considering whether to defer to an administrative agency's determination of a question of law, the court takes into account the comparative institutional qualifications and capabilities of the court and the administrative agency[32] and looks to Wis. Stat. § 227.57 for instruction. The legislature has provided in § 227.57(10) that upon court review of an agency's decision, "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." Section 227.57(8) states that "the court shall not substitute its judgment for that of the agency on an issue of discretion."

[29] *Estate of Rille,* 300 Wis. 2d 1, ¶¶ 36–39; *Paige K.B.,* 226 Wis. 2d at 225.

[30] *Paige K.B.,* 226 Wis. 2d at 225 (quoting *Ayers v. City of Richmond,* 895 F.2d 1267, 1270 (9th Cir. 1990)).

[31] *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 8 n.4.

[32] *Id.,* ¶ 14.

¶ 94. With regard to comparative institutional capability, courts probably have more experience with the doctrine of issue preclusion than administrative agencies. The application of issue preclusion is a question of law with which courts have a great deal of familiarity and with which LIRC, in all likelihood, has less familiarity.[33] Unlike interpretation of a statute that LIRC administers, issue preclusion is not a doctrine peculiarly within LIRC's experience, technical competence, or specialized knowledge.

¶ 95. With regard to the application of Wis. Stat. § 227.57, although LIRC may have discretionary authority delegated to it, determining whether the application of issue preclusion comports with notions of "fundamental fairness" is not within its delegated discretionary authority. For this reason, we do not believe our independent review of LIRC's decision on issue preclusion runs afoul of § 227.57.

¶ 96. We conclude, as did LIRC and the court of appeals,[34] that whether LIRC properly applied the doctrine of issue preclusion is subject to de novo review by the circuit court.[35]

---

[33] This is not to say the ERD and LIRC are completely unfamiliar with issue preclusion. They do confront the doctrine on occasion. *See, e.g., Rogers v. Wis. Knife Works,* ERD No. CR200002066 (LIRC, Dec. 22, 2005); *Taylor v. St. Michael Hosp.,* ERD No. 199901329 (LIRC, May 31, 2001); *Moore v. Am. Family Mut. Ins. Co.,* ERD No. 8700321 (LIRC, Nov. 22, 1991) (*aff'd sub nom. Moore v. LIRC,* 175 Wis. 2d 561, 499 N.W.2d 288 (Ct. App. 1993)).

[34] *Aldrich II,* 334 Wis. 2d 495, ¶ 10.

[35] The standard of review would be somewhat different if we were reviewing a circuit court's application of issue preclusion rather than an agency's. *See, e.g., Estate of Rille,* 300 Wis. 2d 1, ¶¶ 36–39, 82, 103.

B

¶ 97. The first step in the analysis of issue preclu-
sion is to "determine whether the issue or fact was
actually litigated and determined in the prior proceeding
by a valid judgment in a previous action and whether the
determination was essential to the judgment."[36] In the
present case, the issue in question is whether Ms.
Aldrich filed a timely "charge" under federal law.

¶ 98. The second step in the analysis of issue
preclusion requires a circuit court to "determine
whether applying issue preclusion comports with prin-
ciples of fundamental fairness."[37] Several of the factors
in determining fundamental fairness are premised on
questions of law; others are based on fact, policy, and
discretion.

¶ 99. We conclude, as did LIRC, that the issue of
whether Ms. Aldrich filed a timely "charge" under
federal law was actually litigated in federal district
court, was determined in a prior action by a valid
judgment of the federal district court, and was essential
to the prior judgment.

¶ 100. The federal district court decided, on a
motion for summary judgment, that Ms. Aldrich failed to
timely file the "charge" with the EEOC. An issue decided
on summary judgment may satisfy the elements of issue

---

[36] *Estate of Rille,* 300 Wis. 2d 1, ¶ 37.

[37] *Id.,* ¶ 38 (citing *Paige K.B.,* 226 Wis. 2d at 225).

preclusion.[38] As LIRC noted, the federal court "specifically held that Aldrich's intake questionnaire did not constitute a charge." The federal court decided that Ms. Aldrich's formal charge was not filed until February 10, 2004. This decision was essential to the federal court's ultimate conclusion that Ms. Aldrich's federal discrimination claim was time-barred.[39]

¶ 101. Ms. Aldrich argues, however, that issue preclusion cannot apply, as a matter of law, when the legal rules that formed the basis of the prior judgment have changed. She contends that the United States Supreme Court's decision in *Holowecki,* 552 U.S. 389, which we previously discussed briefly and will discuss more fully below, came down after the federal district court decision in the present case and changed how federal courts determine what documents constitute a "charge." She further asserts that the decision would have compelled a different outcome in her case.

¶ 102. Ms. Aldrich's argument is motivated by the Restatement (Second) of Judgments § 28(2)(b) (1982),

---

[38] *Estate of Rille,* 300 Wis. 2d 1, ¶ 48 (quoting *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 310–11, 334 N.W.2d 883 (1983)).

[39] Ms. Aldrich argues here and argued to LIRC that issue preclusion does not apply because the issue before the ERD is whether the intake questionnaire satisfied the complaint requirement of the WFEA, an issue the federal court did not decide. LIRC concluded that Ms. Aldrich's argument rested on the flawed premise that the date of filing of a complaint can be determined independently of the federal law under the deferral circumstances of the present case. As we stated previously, we do not address this issue in the present review, and we do not address it in discussing issue preclusion.

which lists as an "exception[] to the general rule of issue preclusion" an "intervening change in the applicable legal context."[40] The court has consistently looked to this Restatement for guidance on issue preclusion.[41] Contrary to Ms. Aldrich's argument, the comments in the Restatement and the cases on this aspect of issue preclusion recognize that not every intervening change in the law means that issue preclusion cannot, as a matter of law, apply.

¶ 103. To determine whether an intervening change in the law is an exception to issue preclusion, we look at the goals of issue preclusion, which are to avoid repetitive litigation, conserve judicial resources, and foster reliance on judicial action by promoting finality of judgments and avoiding inconsistent decisions.[42] These goals would be undermined if courts always opened their doors to relitigation of previously decided cases each time the law shifted or developed. As a

---

[40] Section 28 of the Restatement (Second) of Judgments (1982) provides as follows:

> [R]elitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . .
>
> (2) The issue is one of law and . . . (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . .

[41] *See Estate of Rille,* 300 Wis. 2d 1, ¶ 48 n.24.

[42] *See Montana v. United States,* 440 U.S. 147, 153–54 (1979).

Comment c. to § 28(2)(b) states: "[T]he choice must be made in terms of the importance of stability in the legal relationships between the immediate parties . . . ."

73

federal circuit court of appeals has explained, "[e]ven if there were a settled change in the law . . . we still would be unable to give the [plaintiffs] the benefit of the evolving jurisprudence by permitting them to relitigate the issue. . . . Such a broad exception would swallow the general rule . . . ."[43]

¶ 104. A number of Wisconsin cases have stated that issue preclusion applies only when the "applicable legal rules remain unchanged."[44] None of these cases supports the proposition that a categorical exception to issue preclusion applies in the present case.

¶ 105. The origin of the assertion in the Wisconsin cases that issue preclusion may apply only when the applicable legal rules remain unchanged is *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948). A comparison of the present case to *Sunnen* demonstrates that the categorical exception to issue preclusion urged by Ms. Aldrich is not compelled by precedent.

¶ 106. *Sunnen* involved litigation between a taxpayer and the government. The United States Supreme Court explained that issue preclusion could be used to "relieve the government and the taxpayer of redundant

---

[43] *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1069 (3d Cir. 1991). *See also United States v. Moser,* 266 U.S. 236, 242 (1924) ("[A] fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law.").

[44] *See, e.g., State ex rel. Flowers v. DHSS,* 81 Wis. 2d 376, 387, 260 N.W.2d 727 (1978); *State ex rel. Staples v. Young,* 142 Wis. 2d 348, 352, 418 N.W.2d 333 (Ct. App. 1987); *Crowall v. Heritage Mut. Ins. Co.,* 118 Wis. 2d 120, 125–26, 346 N.W.2d 327 (Ct. App. 1984); *State ex rel. Lyons v. DHSS,* 105 Wis. 2d 146, 150, 312 N.W.2d 868 (Ct. App. 1981).

litigation" of questions that arise identically each year. *Sunnen,* 333 U.S. at 599. The *Sunnen* Court noted, however, that if the relevant tax laws change, the prior year's determination would be "obsolete or erroneous" and applying collateral estoppel would lead to "inequalities in the administration of the revenue laws." *Id.*

¶ 107. The key distinction between *Sunnen* and the present case is that in the taxpayer context, there is a new claim arising from new (albeit identical) facts each year.[45] In the present case, however, Ms. Aldrich is seeking to relitigate the exact same facts already litigated.[46]

---

[45] One of the Wisconsin cases cited above featured recurring, identical facts, like *Sunnen. See State ex rel. Staples v. Young,* 142 Wis. 2d 348, 418 N.W.2d 333 (Ct. App. 1987). In *Staples,* the court of appeals did not apply issue preclusion and allowed a party to relitigate an issue in light of a change in the governing law with regard to the new (albeit identical) facts. The party sought only to relitigate the new facts, however, and did not seek to relitigate the issue with regard to the previously decided facts.

Comment c. to the Restatement (Second) of Judgments § 28(2)(b) states:

> [T]he choice must be made in terms of the importance of stability in the legal relationships between the immediate parties, the actual likelihood that there are similarly situated persons who are subject to application of the rule in question, and the consequences to the latter if they are subject to different legal treatment.

[46] The other Wisconsin cases cited above are not analogous to the present case. In *Flowers* and *Lyons,* the courts held that parties were not precluded at probation revocation proceedings from relitigating issues that were decided at prior criminal proceedings. The rationale was that the governing procedural rules and burdens of proof were different in the two types of proceedings, not that there had been a change in the applicable law.

¶ 108. If a change in the applicable legal rules has relevance to issue preclusion in the present case, and we think it does, it is in the second step of the analysis of issue preclusion, to which we now turn.

C

¶ 109. The second step in the analysis of issue preclusion is to determine whether applying issue preclusion comports with principles of fundamental fairness. The central goal is "to protect the rights of all parties to a full and fair adjudication of all issues involved in the action . . . ."[47] The decision should be made with special attention to " 'guarantees of due process which require that a person must have had a fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded.' "[48]

¶ 110. Drawing on the Restatement (Second) of Judgments, courts have set forth a list of five factors that may be considered to determine whether issue preclusion comports with fundamental fairness. The five factors are as follows:

> (1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

*Crowall* quoted the requirement from *Sunnen* that the "applicable legal rules remain unchanged," but it did not analyze or rely on that requirement. *Crowall,* 118 Wis. 2d at 126.

[47] *Michelle T. v. Crozier,* 173 Wis. 2d 681, 688–89, 495 N.W.2d 327 (1993).

[48] *Estate of Rille,* 300 Wis. 2d 1, ¶ 60 (quoting *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank,* 224 Wis. 2d 288, 305, 592 N.W.2d 5 (Ct. App. 1998)).

(2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

(3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue;

(4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

(5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?[49]

¶ 111. No single factor is dispositive in the fundamental fairness analysis, and the final decision must rest on a "sense of justice and equity."[50] The five traditional factors from our case law and the Restatement (from which our factors were derived) are not exhaustive or exclusive.

¶ 112. The weight given to each factor is discretionary. Factors 1, 2, and 4 are questions of law. Factors 3 and 5 involve questions of fact and policy and require discretionary determinations. Perhaps unsurprisingly, given that the overall question involves fundamental fairness, the " 'most important factor to be considered is fairness to the party against whom preclusion is as-

---

[49] *See, e.g., Estate of Rille,* 300 Wis. 2d 1, ¶ 61; Restatement (Second) of Judgments § 28 (1982).

[50] *See Estate of Rille,* 300 Wis. 2d 1, ¶¶ 38, 82.

serted . . . .' "[51] Best Buy has the burden of proving that issue preclusion comports with fundamental fairness in the present case.[52]

¶ 113. Because factors 1, 3, and 4 do not warrant lengthy discussion in the present case, we address them quickly before moving on to factors 2 and 5.

¶ 114. With regard to factor 1, as LIRC noted, Ms. Aldrich could have appealed the federal district court's judgment to the Seventh Circuit, but she chose not to. Had appeal been unavailable to Ms. Aldrich, it would have cut strongly in favor of not applying issue preclusion.

¶ 115. We agree with LIRC that factor 3 does not present a strong reason to refuse to apply issue preclusion in the instant case. The parties were represented by counsel. The quality and extensiveness of the proceedings in Ms. Aldrich's federal court action was at least equal to the quality and extensiveness of the proceedings that would unfold at the Wisconsin ERD.

¶ 116. Factor 4 is inconsequential in the present case. The burden was on Best Buy to establish that Ms. Aldrich's "charge" was untimely before the federal court, and the same burden is on Best Buy to establish that the complaint is untimely before the ERD.

¶ 117. Factor 2, in contrast, warrants more careful attention. We are to consider whether the question is one of law that involves two distinct claims or intervening contextual shifts in the law.

¶ 118. The issue of whether Ms. Aldrich's intake questionnaire constituted a charge under federal law is a mixed question of law and fact. The discrimination claims Ms. Aldrich brought under the Wisconsin Fair

[51] *Id.,* ¶ 63 (quoting *Precision Erecting,* 224 Wis. 2d at 306).
[52] *Paige K.B.,* 226 Wis. 2d at 219.

Employment Act are separate and distinct from her discrimination claims brought before the federal EEOC.[53]

¶ 119. Crucially, as LIRC noted, there has been a contextual shift in the relevant law since the federal district court made its decision in September of 2005. In 2008, the United States Supreme Court decided *Federal Express Corp. v. Holowecki,* 552 U.S. 389 (2008), and settled a conflict among the federal circuits regarding what documents constitute a "charge" under federal law.

¶ 120. In *Holowecki,* the employer argued that an intake questionnaire could never constitute a "charge" and that a "charge" could not be deemed filed until the EEOC fulfilled its "mandatory duty to notify the charged party and initiate a conciliation process." *Holowecki,* 552 U.S. at 403. The Court quickly rejected this view, explaining that *"[i]t would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control."*[54] The Court also noted that *"[t]he system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes.* It thus is consistent with the purposes of the Act that *a charge can be a form, easy to complete, or an informal document, easy to draft."*[55]

¶ 121. The United States Supreme Court also declined to treat *all* intake questionnaires as "charges."

---

[53] As noted above, Ms. Aldrich's situation is not analogous to that of the taxpayer in *Sunnen.* Ms. Aldrich is not bringing a separate claim based on new (but identical, recurring) facts. Rather, she is bringing a separate claim in which the exact same set of facts is again relevant.

[54] *Holowecki,* 552 U.S. at 404 (emphasis added).

[55] *Id.* at 403 (emphases added).

"[T]he agency requires some mechanism to separate information requests from enforcement requests." *Holowecki,* 552 U.S. at 401. The Court explained that individuals should be able to ask the agency questions without necessarily triggering the agency's duty to notify the employer. "If an individual knows that reporting this minimal information to the agency will mandate the agency to notify her employer, she may be discouraged from consulting the agency or wait until her employment situation has become so untenable that conciliation efforts would be futile." *Id.*

██ ██

¶ 122. The *Holowecki* Court settled on the following objective standard to define when an intake questionnaire constitutes a charge: "In addition to the information required by the regulations, i.e., an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki,* 552 U.S. at 402. Accordingly, under *Holowecki,* if an objective observer would construe the filing as a request for "the agency to activate its machinery and remedial processes," the filing constitutes a charge. *Holowecki,* 552 U.S. at 402.

¶ 123. Ms. Aldrich argues that *Holowecki* represents a substantial change in the relevant law and that her intake questionnaire would certainly constitute a "charge" under *Holowecki.* Best Buy, on the other hand, argues that *Holowecki* actually adopted the approach that was already the law of the Seventh Circuit Court of Appeals and was applied to Ms. Aldrich's claims by the federal district court.

¶ 124. Best Buy's argument is not persuasive in the present case. The seminal Seventh Circuit Court of Appeals case on what constitutes a "charge" prior to *Holowecki* was *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1989). In *Steffen*, the Seventh Circuit held that in order to constitute a charge, "notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery."[56] Best Buy is correct to assert that the Supreme Court cited *Steffen* in *Holowecki* and that *Holowecki* adopted the standard set forth in *Steffen*.[57]

¶ 125. However, the federal district court in the present case did not apply the *Steffen* standard to Ms. Aldrich's intake questionnaire. Rather, the federal district court relied on another Seventh Circuit case, *Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991), which is in tension with *Steffen* and is no longer good law after *Holowecki*.

¶ 126. In *Perkins*, the Seventh Circuit Court of Appeals held that an intake questionnaire would constitute a charge only "where the information contained in the questionnaire was sufficient to constitute a charge, *and both the claimant and EEOC indicated that they would treat the questionnaire as a charge*."[58] The complainant in *Perkins* "was informed by the EEOC at the time he completed the intake questionnaire that there was insufficient information to support his claim of retaliation and that no further action would be taken

---

[56] *Steffen*, 859 F.2d at 542 (quoting *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983)).

[57] *See Holowecki*, 552 U.S. at 396, 402.

[58] *Perkins*, 939 F.2d at 470 (emphasis added).

on the basis of the questionnaire." *Perkins,* 939 F.2d at 470. Thus, the federal court of appeals did not treat the questionnaire as a charge.

¶ 127. The federal district court in the present case relied heavily on the *Perkins* holding. It concluded that under *Perkins,* "an intake questionnaire [i]s not sufficient to constitute a charge where the EEOC informed the employee that his questionnaire contained insufficient information." The federal district court explained that Ms. Aldrich received a letter requesting additional information from the first EEOC investigator assigned to her case. Because of this letter, the federal district court held that Ms. Aldrich's intake questionnaire could not constitute a "charge."

¶ 128. *Perkins* was in tension with *Steffen* when it was decided. The federal district court might have considered the rule announced in *Steffen* along with the rule set forth in *Perkins* in its decision and tried to resolve the tension. It did not. Regardless of whether Ms. Aldrich's intake questionnaire needed to be supplemented, the questionnaire should have been reviewed to determine whether the EEOC was given "notice that, by filing the Intake Questionnaire, [the complainant] intended to 'activate the Act's machinery.' "[59] The bright-line rule from *Perkins* applied by the federal district court is hard to square with the objective standard set forth in *Steffen.*

¶ 129. Additionally, it seems to us that whatever the status of *Perkins* was before *Holowecki,* it is no longer good law after *Holowecki.* Again, *Holowecki* held that an intake questionnaire that contains a minimal allegation and the name of the charged party constitutes a charge if it is "reasonably construed as a request

---

[59] *Steffen,* 859 F.2d at 544.

for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki,* 552 U.S. at 402. More importantly, the Supreme Court asserted that "[i]t would be illogical and impractical to make the definition of "charge" dependent upon a condition subsequent over which the parties have no control." *Holowecki,* 552 U.S. at 404.

¶ 130. While we leave the issue of whether Ms. Aldrich's intake questionnaire constitutes a valid federal "charge" under *Holowecki* to the ERD, we do note that the federal district court's resolution of Ms. Aldrich's case seems to run directly counter to the Supreme Court's exhortation that the timeliness of a complainant's charge cannot hinge on subsequent actions of the EEOC over which the complainant has no control.[60] It also is in tension with the Supreme Court's reminder that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent

---

[60] The complainant in *Holowecki* included an affidavit with the intake questionnaire that asked the agency to "[p]lease force Federal Express to end their age discrimination." *Holowecki,* 552 U.S. at 405. While Ms. Aldrich's intake questionnaire was not accompanied by a similar affidavit, it still may well have (1) contained the required allegation and information; and (2) been reasonably construed as a request for "the agency to activate its machinery and remedial processes." *Holowecki,* 552 U.S. at 402. Certainly once Ms. Aldrich provided her additional information and "more charges of discrimination," which was still within the 300–day time limit, it was clear that she was seeking enforcement, not merely information. At that point, she had already quit her job with Best Buy, rendering irrelevant the Supreme Court's concern that too loose a definition of "charge" might discourage employees from consulting with the agency out of fear of triggering the agency's duty to report the complaint to the employer. *See Holowecki,* 552 U.S. at 401.

with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Holowecki,* 552 U.S. at 406.

¶ 131. Thus, we agree with Ms. Aldrich that there has been a contextual shift in the relevant law since the federal district court rendered its decision in her case. The question we must address, though, is how this contextual shift factors into the fundamental fairness analysis.

¶ 132. LIRC noted the Supreme Court's recent decision in *Holowecki* but did not analyze whether it constituted a shift from pre-existing Seventh Circuit law. LIRC quoted a section of Best Buy's brief, which relied on *Morgan v. Department of Energy,* 424 F.3d 1271 (Fed. Cir. 2005), and *O'Leary v. Liberty Mutual Insurance Co.,* 923 F.2d 1062 (3d Cir. 1991), for the conclusion that a categorical exception to issue preclusion was not warranted.

¶ 133. We agree with LIRC insofar as it concluded that the present case does not fit into a categorical, absolute exception to the application of issue preclusion. However, LIRC did not go further and analyze whether there was anything about Ms. Aldrich's circumstances that warranted an exception to the application of issue preclusion in the present case.

¶ 134. After briefly introducing factor 5 and summarizing LIRC's analysis of factor 5, we will consider factors 2 and 5 together and explain why the contextual shift in the law and the individual circumstances involved would render the application of issue preclusion in the present case fundamentally unfair.

¶ 135. Factor 5 directs us to consider whether there are matters of public policy and individual circumstances involved that would render the application of issue preclusion fundamentally unfair, including in-

adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

¶ 136. LIRC briefly summarized Ms. Aldrich's arguments (which we discuss in detail below), then quoted Best Buy's brief, which explained that Ms. Aldrich made the same arguments to the federal district court, which rejected them. LIRC also quoted, in full, an "exception" to issue preclusion from the Restatement (Second) of Judgments, from which our factor 5 was derived. The Restatement's fifth exception provides as follows:

> [R]elitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: . . . (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.[61]

¶ 137. LIRC concluded that "(a)" did not apply because Ms. Aldrich was a party in the initial federal action; "(b)" did not apply because the Wisconsin Fair Employment Act has the same 300–day time limit as the federal law; and "(c)" did not apply because Ms. Aldrich had an adequate opportunity and incentive to litigate her claim fully in the initial action. Accordingly, LIRC concluded, "Aldrich's demotion claim *must* be

---

[61] Restatement (Second) of Judgments § 28 (1982).

dismissed as untimely" (emphasis added). To the extent that LIRC concluded it *must* apply issue preclusion because Ms. Aldrich failed to establish that one of the traditional factors was satisfied, LIRC was mistaken as a matter of law.

¶ 138. Although LIRC did analyze the five traditional fundamental fairness factors, its decision suggests that it may have lost sight of the overarching task, which was to make a holistic, discretionary determination regarding fundamental fairness.[62]

¶ 139. Our fundamental fairness analysis, which is particularly guided by factors 2 and 5, leads us to conclude that issue preclusion should not be applied in the present case. Our decision is influenced by unique circumstances that began after Ms. Aldrich first contacted the EEOC in March of 2003, after her demotion.

¶ 140. Ms. Aldrich alleges that the EEOC employee to whom she initially spoke told her that all she needed to do was complete and return the paperwork the EEOC would send and her charge would be filed. Ms. Aldrich completed the intake questionnaire thoroughly and returned it to the EEOC with approximately half of the 300–day time limit still remaining. Ms. Aldrich also responded to requests for more information over the phone, made phone calls independently to check on the status of her case, and provided corrections and additional information when the federal EEOC's first draft of her charge contained inaccuracies. Ms. Aldrich appears to have been diligent and was at the mercy of the EEOC's delays and personnel changes.

---

[62] *See, e.g., Estate of Rille,* 300 Wis. 2d 1, ¶¶ 38, 82. *See also McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) ("[T]here must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning.").

The actions of EEOC barred Ms. Aldrich from having the merits of her claim considered under the law.

¶ 141. The federal antidiscrimination statutes and the Wisconsin Fair Employment Act are both remedial, and it is common for complainants to file without the assistance of a lawyer, as Ms. Aldrich did.[63] The United States Supreme Court noted in *Holowecki* that "[t]he system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." *Holowecki,* 552 U.S. at 403. In Ms. Aldrich's case, the system seems to have come up far short of the Supreme Court's vision. It was not accessible to Ms. Aldrich.

¶ 142. Although Ms. Aldrich had the opportunity to make these arguments in federal district court, her case was heard before the United States Supreme Court made its clear statements in *Holowecki* that "[i]t would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control" and that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies."[64] The federal district court in Ms. Aldrich's case relied heavily on *Perkins,* which does not share *Holowecki*'s complainant-friendly stance on the procedures for filing a charge with the EEOC.

¶ 143. As we explained above, a contextual shift in the law does not necessarily mean that issue preclusion, as a matter of law, cannot apply. A categorical

---

[63] *See Holowecki,* 552 U.S. at 402 ("In the administrative context now before us it appears *pro se* filings may be the rule, not the exception.").

[64] *Holowecki,* 552 U.S. at 404, 406.

exception allowing parties to relitigate completed cases in light of future legal developments would weaken the goal of finality. But Ms. Aldrich did not wait for a change in the law and then attempt to relitigate a completed lawsuit. Rather, she brought her discrimination claim to the Wisconsin ERD immediately after the federal district court dismissed her federal EEOC claim as untimely. Ms. Aldrich evidently believed that the state system would still investigate the merits of her claim, and when her state claim was again attacked on the grounds of timeliness, she put forth a plausible interpretation of the Wis. Admin. Code § DWD 218.03(5), which, if adopted, would have meant her state complaint was filed timely.

¶ 144.　Ms. Aldrich did not lie in wait for a change in the law and then rush to the Wisconsin ERD to have her case heard for a second time. In Ms. Aldrich's mind, her case had never ended. She was navigating the complexities of having two available forums, federal and state, and attempting to have her state claims heard on the merits. Under these circumstances, we decline to allow a federal district court's interpretation of federal law, subsequently rejected by the United States Supreme Court, to deny a Wisconsin employee the right to pursue her claims under the Wisconsin Fair Employment Act.

¶ 145.　Under factor 5, we are to consider matters of public policy and individual circumstances. We conclude as a matter of public policy expressed by the Wisconsin legislature and the United States Supreme Court that complainants who diligently pursue their employment discrimination claims should be given leeway in an effort to preserve their rights to have their claims decided on the merits. The individual circumstances of Ms. Aldrich's case suggest that she was dili-

gent and the untimeliness lay at the door of the federal EEOC investigators.

¶ 146. Additionally, while she was seeking redress the United States Supreme Court changed the law. Ms. Aldrich should have the benefit of the analysis of the United States Supreme Court. In the context of a remedial statutory scheme, it seems problematic for her claims to be barred so that they would never be heard on their merits.[65]

¶ 147. We accept that Ms. Aldrich had a full opportunity to litigate her claim before the federal district court under then-existing law and to appeal to the federal court of appeals, but given the unique circumstances of Ms. Aldrich's entire experience, we are not persuaded that she has received "a fair opportunity procedurally, substantively and evidentially to pursue the claim . . . ."[66]

¶ 148. In sum, we conclude, based on a combination of facts and circumstances and our sense of justice and equity, that it would not comport with our notion of fundamental fairness if Ms. Aldrich were precluded from relitigating whether her intake questionnaire constituted a "charge" under federal law.

¶ 149. Thus, we remand the cause to LIRC with instructions for LIRC to remand the cause to the ERD for further proceedings. Best Buy will no longer be able

---

[65] Although it is not essential to our holding, we do take note that we disagree to some extent with LIRC's conclusion that it was foreseeable to Ms. Aldrich that the federal court's procedural judgment would have a preclusive effect on her claims before the state agency. As we observed, Ms. Aldrich did not believe the timeliness of her state claims hinged on the question that was addressed by the federal district court.

[66] *Estate of Rille,* 300 Wis. 2d 1, ¶ 60 (quoting *Precision Erecting,* 224 Wis. 2d at 305).

to rely on issue preclusion to prevent Ms. Aldrich from relitigating whether her intake questionnaire constituted a charge under federal law such that the charge was timely filed. The *Holowecki* decision is relevant to this issue. The ERD may also need to determine whether Ms. Aldrich's letter containing "more charges of discrimination" should be considered an amendment to a "charge" under federal law that timely asserted a claim of constructive discharge. Considering and applying federal law is not entirely unfamiliar to the state agency.[67]

\* \* \* \*

¶ 150. For the reasons set forth, we conclude that Ms. Aldrich is not barred by the doctrine of issue preclusion from litigating before the ERD the timeliness of the filing of her federal discrimination "charge" with the EEOC. In other words, Ms. Aldrich may litigate whether the intake questionnaire filed with the EEOC qualifies as a "charge" under federal law. If it does, then under the approach taken by LIRC in this and prior cases, the "charge" was filed timely for federal and state purposes and Ms. Aldrich will be deemed to have filed a timely complaint with the ERD.

¶ 151. We conclude that applying the doctrine of issue preclusion in the present case does not comport with principles of fundamental fairness. We reach this decision based on the unique circumstances of Ms. Aldrich's case, the basis for the decision of the federal district court barring Ms. Aldrich's claim as untimely, the shift in the federal law relating to what documents constitute a valid federal "charge" (*see Federal Express Corp. v. Holowecki,* 552 U.S. 389 (2008)), and the

_____

[67] *See, e.g., Keup v. Mayville Metal Products,* (LIRC, ERD Case No. 9302193, EEOC Case No. 260930624, June 22, 1995).

90

Wisconsin legislative public policy of protecting the statutory rights of employees with discrimination claims.

¶ 152. Accordingly, we reverse the decision of the court of appeals and remand the matter to LIRC with instructions to remand the matter to the ERD to determine whether the intake questionnaire filed with the federal EEOC in Ms. Aldrich's case satisfies the requirements of a charge under federal law such that the charge was filed timely within the 300–day federal statutory period.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the Labor and Industry Review Commission with instructions.