COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP715**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV87

**IN COURT OF APPEALS
DISTRICT III**

ESTATE OF HUGH F. MCCAFFERY, SR., BY ITS PERSONAL REPRESENTATIVE HUGH F. MCCAFFERY, JR.,

   PLAINTIFF-APPELLANT,

 V.

GILBERT GARRETT, ROXANNE GARRETT, SHIRLEY MARTIN, GEORGE AIKEN, WENDY THAYER, HARJIT K. SOHPAUL, RESHAM SOHPAUL, PORTAL PROPERTIES, LLC AND PIVITOL PARTNERS, LLC,

   DEFENDANTS-RESPONDENTS.

            APPEAL from judgments of the circuit court for Rusk County: STEVEN P. ANDERSON, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

            Before Stark, P.J., Hruz and Gill, JJ.

            **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. The Estate of Hugh McCaffery, Sr., appeals summary judgments entered in favor of Gilbert Garrett, Roxanne Garrett, Shirley Martin, George Aiken, Wendy Thayer, Harjit Sohpaul, Resham Sohpaul, and Portal Properties, LLC.[1]  The Estate contends that the circuit court erred by dismissing several of its claims against these parties.  We reject all of the Estate's arguments except for its argument that the court erred by granting summary judgment on its claim for conversion of personal property claim against Martin.[2]  We therefore affirm in part, reverse in part, and remand for further proceedings.[3]

---

[1]  Because Gilbert and Roxanne Garrett share the same last name, we will refer to them individually using their first names.

In addition, Portal Properties was formerly known as Pivitol Partners, LLC.  Although the Estate filed this action against both Portal Properties and Pivitol Partners, as if they were two separate entities, we will treat them as one entity for purposes of this appeal.

[2]  Gilbert, Roxanne, Aiken, Thayer, and the Sohpauls each make alternative arguments to their arguments discussed in this opinion.  We need not address these alternative arguments, however, because the arguments discussed in this opinion are dispositive of their appeals.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (we need not address all issues raised by the parties if one is dispositive).

[3]  Many of the Estate's arguments on appeal are disorganized, undeveloped, and lacking appropriate citations to both the record and relevant legal authority.  We need not address arguments that are undeveloped and unsupported by legal authority.  *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).  Nor do we have a duty "to scour the record to review arguments unaccompanied by adequate record citation."  *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.  We have done our best to discern the Estate's arguments, but we will not abandon our neutrality to develop its arguments.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.  Accordingly, to the extent we do not address an issue or argument the Estate intended to raise, we conclude such an issue or argument is not sufficiently developed to warrant our consideration.

**BACKGROUND**

¶2    The following facts are undisputed for purposes of this appeal. McCaffery Sr. and his brother owned a farm ("the Farm") in Rusk County, Wisconsin, that was allegedly worth $225,000 as of September 2013. Near the end of that month, the two brothers signed a contract agreeing to eventually sell the Farm to Gilbert for only $110,200. The contract contained a number of covenants, including a covenant that "[t]he following personal property is included with the premises," which was then followed by a handwritten note: "As is." At the time of the contract, both McCaffery Sr. and Gilbert were associated with an organization known as the Institute for the Study of Human Awareness, Inc. (ISHA) and its leader, Ishwar Puri.[4]

¶3    According to the complaint, McCaffery Sr. "conditioned" the sale of the Farm on Gilbert's "assurances that the [F]arm was being purchased for Ishwar Puri and ISHA." ISHA apparently wanted the Farm "to construct a conference center complex" and "the Dera Hall." The complaint further alleged that Gilbert agreed: (1) that he would hold title to the Farm "as trustee for ISHA" until it repaid him the purchase price; and (2) "[t]hat if ISHA followed through with [its] commitments and paid [him] back …, [a]ll the land would then revert to ISHA."

¶4    Gilbert subsequently assigned his right to purchase the Farm to Pivitol Partners, LLC, of which he and his wife, Roxanne, were the only members.

---

[4] The record contains very little factual information about ISHA. The Estate claims—without any record support—that "ISHA purports to be devoted to the 'personal and spiritual discernment or development' of its adherents or 'a better understanding of human capacity.'"

In November 2013, McCaffery Sr. and his brother conveyed the Farm to Pivitol Partners via warranty deed. Sometime thereafter, Pivitol Partners changed its name to Portal Properties, LLC.

¶5 Despite the sale, McCaffery Sr. continued to live on the Farm for two more years, until mid-November 2015, when he began end-of-life care in a nursing home "due to terminal cancer." On November 24, 2015, McCaffery Sr. executed a number of legal documents, including a new will, naming Martin and Gilbert as executors of McCaffery Sr.'s estate, and authorizations that changed the joint owner of one of his bank accounts. McCaffery Sr. died four days later.

¶6 Around the time of McCaffery Sr.'s death, his son, Hugh McCaffery, Jr., observed several individuals removing some of McCaffery Sr.'s personal property from the Farm, including firearms, computers and files. McCaffery Jr. filed a report with the Rusk County Sheriff's Office, alleging that people had stolen his father's personal property. However, the sheriff's office concluded that the dispute was a civil matter, and it declined to get involved. Thereafter, additional items were removed from the Farm at the direction of Portal Properties. Portal Properties eventually contracted with an auction service to sell McCaffery Sr.'s remaining personal property on October 1, 2016.

¶7 Meanwhile, McCaffery Jr. petitioned for the administration of McCaffery Sr.'s estate. McCaffery Jr. was later appointed as the personal representative of the Estate after the circuit court found that McCaffery Sr.'s November 2015 will was invalid, because two of the witnesses were beneficiaries of the will. McCaffery Jr. then commenced an action on behalf of the Estate, seeking the return of allegedly stolen personal property or, alternatively, the stolen property's cash value. The Estate voluntarily dismissed that case in 2019 after

some of the defendants, including Gilbert and Martin, were dismissed and the Estate's appeal of that decision was unsuccessful.

¶8      In October 2019, the Estate commenced this action.  The Estate alleged that Gilbert, Portal Properties, and Martin unlawfully disposed of, or took, McCaffery Sr.'s personal property.  In addition, the Estate claimed that Martin had stolen money from McCaffery Sr.'s Fidelity investment account and Pennsylvania State Employees Credit Union (PSECU) bank accounts.  The Estate also alleged that Gilbert had violated his "assurances" to McCaffery Sr. by selling the Farm in 2018.  With respect to Roxanne, the Estate alleged that she had executed the deed that transferred the Farm from Portal Properties to several individuals, including Aiken, Thayer and the Sohpauls.  The Estate also asserted claims against those individuals, claiming they knew of the Estate's claims "for fraud in the inducement of the sale of the McCaffery Farm" and that their deed to the Farm should be cancelled.

¶9      All of the defendants later filed motions to dismiss or, alternatively, for summary judgment.  At a hearing on those motions, the circuit court first granted Aiken's, Thayer's and the Sohpauls' motion for summary judgment.  In doing so, the court concluded that they were good faith purchasers of the Farm and, as such, they could not be "divest[ed] … of their title to the property."  The court also granted Martin's motion for summary judgment, concluding that she did not steal, convert or "otherwise fraudulently acquire[]" McCaffery Sr.'s personal property or his financial accounts.

¶10      Next, the circuit court granted Roxanne's motion for summary judgment because it could not "find any allegations nor any evidence in the record which seemed to indicate that Roxanne Garrett was responsible for any … fraud."

Likewise, the court concluded that the complaint failed to adequately allege a claim of fraud in the inducement against either Gilbert or Portal Properties, and the court therefore granted summary judgment on those claims as well. The court also granted Gilbert summary judgment on the Estate's claim for the theft or conversion of McCaffery Sr.'s personal property because the claim was barred by collateral estoppel.[5] The court determined, however, that the Estate could proceed with its claim against Portal Properties regarding the ownership and disposal of McCaffery Sr.'s personal property because there were genuine issues of material fact as to the rightful owner of that property.

¶11 The Estate now appeals. Additional facts will be provided as necessary below.

**DISCUSSION**

¶12 We review a circuit court's summary judgment decision de novo, employing the same methodology as the circuit court. ***Chapman v. B.C. Ziegler & Co.***, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. Our "[s]ummary-judgment analysis is a two-step process." ***Id.*** First, we must determine whether the complaint states "a proper claim for relief" and "whether the answer disputes the facts that purport to underlie that claim." ***Id.*** (citation omitted). If the pleadings join issue on a proper claim for relief, we must then

---

[5] Although the circuit court said "res judicata" during the hearing, the court's written order explained that summary judgment was granted on the basis of "collateral estoppel." The Estate also tailors its arguments on appeal to address collateral estoppel. Despite the parties' and the circuit court's use of the terms "collateral estoppel" and "res judicata," we will instead use the terms "issue preclusion" and "claim preclusion," respectively. *See* ***Kruckenberg v. Harvey***, 2005 WI 43, ¶18 n.11, 279 Wis. 2d 520, 694 N.W.2d 879 (instructing that the term issue preclusion should be used instead of collateral estoppel and that the term claim preclusion should be used instead of res judicata).

determine "whether there are any genuine issues of disputed facts that are material to the complaint's claim." ***Id.***

¶13     Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   WIS. STAT. § 802.08(2) (2021-22).[6]   Inferences to be drawn from the summary judgment materials are viewed in the light most favorable to the party opposing the motion.   ***Lambrecht v. Estate of Kaczmarczyk***, 2001 WI 25, ¶23, 241 Wis. 2d 804, 623 N.W.2d 751.

## I.  Claims against Gilbert Garrett

### A.  *Fraud in the inducement*

¶14     The Estate argues that the circuit court erred by granting Gilbert summary judgment on the Estate's fraud in the inducement claim.[7]   The Estate contends that its complaint "clearly states a claim for fraud in the inducement" and that there are genuine issues of material fact as to the elements of that claim.[8]

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[7] As an initial matter, the Estate claims that the contract to sell the Farm is "void" because Gilbert did not sign the contract, and, therefore, the contract did not satisfy the statute of frauds.  *See* WIS. STAT. § 706.02.  As Gilbert correctly argues, however, there is "an exception to the statute of frauds … where all parties have performed the contract, indicating their acquiescence in its terms."  *See* ***Schaefer v. Schaefer***, 72 Wis. 2d 600, 607, 241 N.W.2d 607 (1976).  Thus, the statute of frauds is not at issue in this case because McCaffery Sr. and his brother conveyed the Farm and were paid the purchase price.

[8] Although the Estate appeals the circuit court's order granting Portal Properties partial summary judgment, the Estate does not develop any argument challenging that decision.  To the extent the Estate is challenging that decision, we note that our analysis of the Estate's fraud in the inducement claim against Gilbert would also apply to Portal Properties.

¶15 To state a claim for fraud in the inducement, a plaintiff must allege that: (1) the defendant made a factual representation; (2) the factual representation was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; (5) the plaintiff believed the statement to be true and relied on it to his or her detriment; and (6) the untrue representation occurred before the formation of a contract. *See Kaloti Enters. v. Kellogg Sales Co.*, 2005 WI 111, ¶¶12, 30, 283 Wis. 2d 555, 699 N.W.2d 205. The plaintiff must also comply with the heightened pleading standards in WIS. STAT. § 802.03(2). *See Kaloti Enters.*, 283 Wis. 2d 555, ¶21.

¶16 WISCONSIN STAT. § 802.03(2) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "[T]his statute requires that allegations of fraud specify the particular individuals involved, where and when misrepresentations occurred, and to whom the misrepresentations were made. In other words, '[p]articularity means the who, what, when, where and how.'" *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶73, 389 Wis. 2d 669, 937 N.W.2d 37 (second alteration in original; citations omitted).

¶17 The Estate argues that the following allegations in its complaint "set forth the essence of [its] fraud claim":

> 11. That prior to September 24th, 2013[,] and pursuant to Ishwar Puri's and ISHA's desire to construct a conference center complex on the McCaffery Farm property as well as the Dera Hall project across the road on other donated McCaffery lands, defendant Gilbert Garrett entered into an agreement for the purchase by [Gilbert] of the McCaffery farm for less than half of its fair market value for the sum of $110,200.00 dollars [sic]—conditioned on defendant

Gilbert Garrett's assurances that the farm was being purchased for Ishwar Puri and ISHA. The stipulations of the agreement being:

(a) Garrett was to hold title to these lands as trustee for ISHA until the $110,200.00 purchase price was repaid to Garrett.

(b) That if ISHA followed through with [its] commitments and paid back Gilbert Garrett, [a]ll the land would then revert to ISHA.

(c) See Exhibit 8 hereto: An email quote by Jonathan Rabkin of ISHA to Hugh F. McCaffery, Sr. This email is titled[:] Disposition of H. McCaffery property dated 4/10/13.…[9]

….

18. That on or about June 1st, 2018[,] defendant Roxanne Garrett executed a warranty deed from Portal Properties, LLC, to six individuals, George Aiken, Wendy Thayer, Harjit K. Sohpaul and Resham D. Sohpaul, and Hardev Atwal and Elisabeth Martorana, consummating sale of the McCaffery Farm at the purchase price of $240,000.00 dollars [sic], more than double the price paid to the McCafferys in November of 2013, as set forth in Exhibit 14 attached hereto.

In addition, paragraph twenty-two of the complaint alleged

[t]hat upon information and belief, no part of the proceeds of the sale of the McCaffery Farm … herein has been tendered to Ishwar Puri or ISHA for its Dera project, or for any other purpose, but instead has been retained in total by defendant Gilbert Garrett for his own purposes.

---

[9] Exhibit 8 was an email from Jonathan Rabkin to McCaffery Sr. asking McCaffery Sr. to donate all of his land—i.e., the Farm—to ISHA. The email included several tentative conditions for the proposed donation, including that McCaffery Sr. would sell no more than twenty acres of his land to several individuals before he donated the land. The email, however, did not discuss or provide any details regarding an agreement for Gilbert to purchase McCaffery Sr.'s entire Farm.

¶18 We reject the Estate's argument that these allegations are sufficient to state a claim for fraud in the inducement. At a minimum, these allegations fail to state—with particularity—where, when, or how the alleged misrepresentations occurred. *See id.*; *see also* WIS. STAT. § 802.03(2). Indeed, the complaint is silent about the location of where Gilbert made the alleged misrepresentations. The complaint also fails to provide a particular time when Gilbert made the alleged misrepresentations, merely stating that the alleged misrepresentations occurred sometime "prior to September 24th, 2013." The complaint fails to provide any additional specificity or to narrow the incredibly broad range of time that occurred "prior to" that date. Further, the complaint does not allege how Gilbert made the alleged misrepresentations, such as whether the misrepresentations occurred in person, by telephone, or in writing.

¶19 In addition to those deficiencies, the complaint failed to "generally" allege any facts related to Gilbert's mental state when making the alleged misrepresentations. *See* WIS. STAT. § 802.03(2) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). For example, the complaint did not allege that Gilbert either made any representations knowing they were untrue or made them recklessly without caring whether they were true or false. *See **Kaloti Enters.**, 283 Wis. 2d 555, ¶12. Similarly, the complaint failed to allege that Gilbert made any representations with intent to defraud and to induce McCaffery Sr. to act upon those representations. *See **id.***

¶20 We therefore conclude that the Estate failed to allege sufficient facts with particularity to state a claim for fraud in the inducement against Gilbert. The circuit court therefore did not err by granting Gilbert summary judgment on that claim.

*B. Theft of personal property*

¶21     The Estate next argues that the circuit court incorrectly applied issue preclusion to the Estate's claim against Gilbert for the theft or conversion of McCaffery Sr.'s personal property.  The Estate acknowledges that it previously asserted a claim against Gilbert in Rusk County Circuit Court case No. 2017CV106 regarding the disposition of McCaffery Sr.'s personal property.  But the Estate argues that the issue in that case was whether Gilbert had purchased McCaffery Sr.'s personal property and that the court wrongly determined that Gilbert should be dismissed from that prior case.  The Estate therefore contends that it "had no opportunity to litigate the personal property claim against Gilbert" and that it would be fundamentally unfair to apply issue preclusion under these circumstances.

¶22     "The doctrine of issue preclusion, formerly known as collateral estoppel, is designed to limit the relitigation of issues that have been actually litigated in a previous action."  *Aldrich v. LIRC*, 2012 WI 53, ¶88, 341 Wis. 2d 36, 814 N.W.2d 433.  We employ a two-step analysis to determine whether issue preclusion bars a subsequent claim.  *Munger v. Seehafer*, 2016 WI App 89, ¶60, 372 Wis. 2d 749, 890 N.W.2d 22.

¶23     First, we must decide "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment."  *Aldrich*, 341 Wis. 2d 36, ¶97 (citation omitted).  "An issue is 'actually litigated' when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'"  *Randall v. Felt*, 2002 WI App 157, ¶9, 256 Wis. 2d 563, 647 N.W.2d 373 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (AM.

L. INST. 1980)). "An issue may be submitted and determined on a motion to dismiss for failure to state a claim …." *Id.*, ¶9 n.4 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (AM. L. INST. 1980)). This first step of the analysis presents a question of law that we review de novo. *Munger*, 372 Wis. 2d 749, ¶60.

¶24    Second, we must decide whether applying issue preclusion comports with principles of fundamental fairness. *Aldrich*, 341 Wis. 2d 36, ¶109. In doing so, we may consider a variety of factors, including:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of [issue preclusion] to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Cirilli v. Country Ins. & Fin. Servs.*, 2013 WI App 44, ¶8, 347 Wis. 2d 481, 830 N.W.2d 234 (citation omitted). A circuit court's resolution of this second step is reviewed for an erroneous exercise of discretion. *Munger*, 372 Wis. 2d 749, ¶60. When a court fails to explain its reasoning, we may search the record to determine whether it supports the court's discretionary decision. *West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶52, 354 Wis. 2d 130, 848 N.W.2d 875.

¶25    In case No. 2017CV106, the Estate alleged that Gilbert stole McCaffery Sr.'s personal property. Gilbert, in turn, filed a motion to dismiss that claim, and the circuit court ultimately granted the motion, concluding:

> The … deeds are to the LLCs. The LLCs are separate, distinct, and independent legal entities. And, therefore, because they were the purchasers of the real property directly from [McCaffery Sr.] and [his brother] and then from one LLC to the other, any rights that they may have in the personal property, and I'm not making a decision as to the rights in the personal property, but any rights that they may have had to control and dispose of the personal property … are their rights because they are acting … or allegedly acting under that … offer to purchase. So I think [Gilbert]'s motion to dismiss him individually is appropriate. He is not the appropriate party. It is the LLCs that have to be interposed in this action and pleaded, added, something in this action in order to have the appropriate parties. It is the LLCs that have to defend title to the personal property, not [Gilbert] individually. So as to [Gilbert] individually, I'm dismissing the complaint as to him.

In other words, the court determined that Gilbert could not be held liable for the alleged conversion or theft of McCaffery Sr.'s personal property. The court subsequently issued an order dismissing the Estate's claim against Gilbert. Although the Estate initially filed a notice of appeal, this court dismissed that appeal because the notice was not signed by an attorney licensed to practice law in Wisconsin.

¶26 Based on these facts, we conclude that Gilbert's alleged culpability with respect to the theft and conversion of McCaffery Sr.'s personal property was actually litigated in case No. 2017CV106. The Estate's complaint raised the issue of Gilbert's culpability for theft and conversion of McCaffery Sr.'s personal property, and Gilbert submitted that issue to the circuit court by filing a motion to dismiss. *See Randall*, 256 Wis. 2d 563, ¶9 & n.4. The court resolved the issue by determining, as a matter of law, that only "the LLCs" could be held liable for such a claim, and this determination was essential to the circuit court's order dismissing the Estate's claim against Gilbert. *See Aldrich*, 341 Wis. 2d 36, ¶97.

13

¶27 We also conclude, for the following reasons, that the circuit court's application of issue preclusion in this case comports with fundamental fairness. First, the Estate had an opportunity to obtain review of the circuit court's decision in case No. 2017CV106. *See Cirilli*, 347 Wis. 2d 481, ¶8. Although the Estate's appeal was dismissed, the Estate never remedied the defect in its notice of appeal. Second, the claim asserted in case No. 2017CV106 against Gilbert is the same as the claim asserted in this appeal—both involve the alleged theft or conversion of McCaffery Sr.'s personal property. *See id.* Third, both this case and the claim in case No. 2017CV106 were litigated in Rusk County; therefore, there is no material difference between the qualities of the courts in each case. *See id.* Fourth, the burden of persuasion has not shifted or changed since the resolution of case No. 2017CV106. *See id.* Fifth, the Estate had an adequate opportunity and incentive to litigate the claim against Gilbert in case No. 2017CV106, including on appeal. *See id.* The Estate might disagree with the court's decision in case No. 2017CV106, but it failed to obtain review of that decision on appeal or even complete an attempt to do so.

¶28 We conclude that the circuit court correctly determined that Gilbert's liability for the theft or conversion of McCaffery Sr.'s personal property had been actually litigated and determined in case No. 2017CV106, and the court did not erroneously exercise its discretion by determining that the application of issue preclusion comported with fundamental fairness. Thus, the court properly granted summary judgment on the Estate's theft and conversion claim against Gilbert.

## II. Claim against Roxanne Garrett

¶29 The Estate also contends that circuit court erred by granting summary judgment on its fraud claim against Roxanne. The Estate explains that

14

"Roxanne was named as a defendant because of her complicity in the fraud perpetrated on [McCaffery Sr.]" The Estate notes that Roxanne was a member of the LLC that purchased the Farm and that she executed the deed which transferred the Farm to the subsequent owners in 2018.

¶30 For the same reasons the Estate failed to state a fraud claim against Gilbert, we conclude that the Estate also failed to state a fraud claim against Roxanne. The complaint alleged

> [t]hat on or about June 1st, 2018 defendant Roxanne Garrett executed a warranty deed from Portal Properties, LLC, to six individuals, George Aiken, Wendy Thayer, Harjit K. Sohpaul and Resham D. Sohpaul, and Hardev Atwal and Elisabeth Martorana, consummating sale of the McCaffery Farm at the purchase price of $240,000.00 dollars [sic], more than double the price paid to the McCafferys in November of 2013, as set forth in Exhibit 14 attached hereto.

Other than several general allegations regarding Roxanne's ownership interest in the LLCs and her marriage to Gilbert, the complaint contains no other allegations involving Roxanne. The complaint does not allege that Roxanne misrepresented any fact, that she had any contact with McCaffery Sr., or that she knew about Gilbert's alleged "assurances" to McCaffery Sr. The complaint therefore fails to plead any element of a fraud in the inducement claim against Roxanne, much less plead those elements with particularity. *See **Kaloti Enters.***, 283 Wis. 2d 555, ¶¶12, 30; WIS. STAT. § 802.03(2).

¶31 The circuit court correctly determined that the Estate had failed to state a claim upon which relief could be granted against Roxanne. As a result, the court properly granted summary judgment in favor of Roxanne and dismissed her from this case.

## III. Claims against Martin

### A. PSECU bank account

¶32    The Estate next argues that summary judgment was improperly granted on its claim that Martin unlawfully obtained one of McCaffery Sr.'s PSECU bank accounts.[10]    In doing so, the Estate appears to contend that McCaffery Sr. was incompetent when conveying to Martin a joint-ownership interest in the account on November 24, 2015.  The Estate asserts that a fact finder could infer that McCaffery Sr. was incompetent because McCaffery Sr. executed the relevant documents four days before his death and while he was in hospice care.  The Estate also asserts that McCaffery Sr.'s incompetency can be inferred from provisions in his November 24, 2015 will that "make no sense."  The Estate points out that the will contained a trust for minor beneficiaries despite the will not naming any minor beneficiaries.  The Estate also points out that the will falsely asserts that McCaffery Sr.'s brother owed McCaffery Sr. $80,000.

---

[10] The Estate's legal theory for this claim is not entirely clear and is woefully undeveloped.  The Estate does not cite any legal authority in support of its argument, nor does it explain what elements it must prove.

In any event, we note that the Estate's claim on appeal is narrower than the claims alleged in the complaint.  Although the Estate's complaint seems to allege that Martin was involved in the theft or conversion of McCaffery Sr.'s Fidelity investment account and both of his PSECU bank accounts, the Estate's arguments on appeal are limited to only one specific PSECU bank account.  Indeed, it is undisputed that McCaffery Sr.'s ex-wife was the primary beneficiary of McCaffery Sr.'s Fidelity investment account and the co-owner of McCaffery Sr.'s other PSECU bank account.  We therefore will not address these other accounts further.  The complaint also alleged that Martin used a fraudulent will to obtain the PSECU bank account.  The Estate does not argue on appeal, however, that the PSECU bank account was transferred pursuant to the November 2015 will.  Rather, the Estate appears to acknowledge that Martin obtained ownership of the account from the authorization form giving Martin a joint-ownership interest in the account.  Accordingly, we will not address the Estate's allegation regarding the use of a fraudulent will.

¶33 Martin argues—and we agree—that the Estate has not shown any genuine issue of material fact regarding McCaffery Sr.'s competency on November 24, 2015. On that day, McCaffery Sr. signed an authorization document in which he conveyed to Martin a joint-ownership interest in one of his PSECU bank accounts—the account at issue in this appeal. A notary public subsequently notarized that document. On the same day, McCaffery Sr. also executed a will, which was signed by three witnesses who stated—after being sworn by the notary public—that "[t]o the best of [their] knowledge, [McCaffery Sr.] is 18 years of age or older, of sound mind and under no constraint or undue influence."[11] Thus, a fact finder could reasonably infer that McCaffery Sr. was competent at the time he gave Martin a joint-ownership interest in the PSECU bank account.

¶34 None of the facts discussed by the Estate create a reasonable inference that McCaffery Sr. was incompetent. Although McCaffery Sr. executed the authorization document while in hospice care, the Estate has not put forth any evidence showing that patients in hospice care are generally incompetent or that McCaffery Sr., individually, exhibited signs of incompetency. Thus, a fact finder could only speculate whether McCaffery Sr.'s hospice care suggested that he was incompetent, which is not enough to avoid summary judgment. *See **Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.***, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999) ("It is not enough to rely upon unsubstantiated conclusory

---

[11] Although this will was not admitted to probate because two of the witnesses were beneficiaries in the will, the probate court *did not* find that the will was fraudulent, that McCaffery Sr. lacked capacity, or that he was unduly influenced. In addition, there was at least one disinterested witness who stated that McCaffery Sr. appeared to be "of sound mind."

remarks, speculation, or testimony which is not based upon personal knowledge.").

¶35 Furthermore, a fact finder would not be able to infer that McCaffery Sr. was incompetent based on the provisions in his November 24, 2015 will. That will included several unnecessary provisions related to a testamentary trust for McCaffery Sr.'s minor beneficiaries, but nothing in the will suggests that McCaffery Sr. actually believed that he had any minor beneficiaries. Rather, the trust provisions appear to be standard, form language. In addition, the Estate has not identified any record support for its conclusory claim that McCaffery Sr.'s brother did not owe McCaffery Sr. $80,000. Therefore, a fact finder could not reasonably infer that McCaffery Sr. was incompetent based on his will referencing this debt.

¶36 In short, even viewed in a light most favorable to the Estate, none of the facts identified by the Estate create a genuine issue of material fact regarding McCaffery Sr.'s competency to give Martin a joint-ownership interest in his

PSECU bank account.[12]  Accordingly, the circuit court properly granted summary judgment and dismissed this claim.[13]

## B.  Personal property

¶37    The Estate also argues that the circuit court improperly granted summary judgment and dismissed its claim that Martin converted McCaffery Sr.'s personal property after his death.  The Estate points out Martin admitted that between November 28, 2015, and September 27, 2016, "she did remove items of personal property from the premises subject to this lawsuit."  The Estate further argues that it did not need to prove that Martin had wrongful intent or bad faith when removing the property.

¶38    In response, Martin argues that there are no genuine issues of material fact regarding the Estate's conversion of personal property claim.[14]

---

[12] Even if one could infer that McCaffery Sr. was incompetent on November 24, 2015, the Estate has not responded to Martin's alternative argument that the Estate would not be entitled to the PSECU bank account.  Martin contends that McCaffery Sr.'s ex-wife—not the Estate— would be entitled to the PSECU bank account in the event that McCaffery Sr. was incompetent because McCaffery Sr. would have lacked competency to remove his ex-wife's joint-ownership interest in the account, which he did on the same day he granted Martin her joint-ownership interest.  Thus, McCaffery Sr.'s ex-wife would have owned the account after McCaffery Sr. passed away.  By failing to respond to this argument, the Estate concedes the validity of it.  *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

[13] The Estate argues in passing that Martin's accounting of the PSECU bank account was "somewhat sketchy and difficult to follow" and that Martin was engaged in the unauthorized practice of law.  These arguments, however, are undeveloped and need not be addressed.  *See Pettit*, 171 Wis. 2d at 646-47.

Martin acknowledges that she "remove[d]" personal property from the Farm "between November 2015 and the fall of 2016," but she argues that she "did so with the belief that all of the personal property belonged to Gilbert … and/or Portal Properties." Martin also asserts that she "did not remove property so as to 'take' or 'control' it" but, rather, to "protect" the personal property, to "winterize" the Farm, and to "prepare" the Farm for an incoming renter. She therefore contends that the first element of conversion has not been met.

¶39 To establish the common law tort of conversion, the plaintiff must prove: (1) that the defendant intentionally controlled or took property belonging to the owner; (2) that the defendant controlled or took the property without the owner's consent or without lawful authority; and (3) that the defendant's act with respect to the property seriously interfered with the right of the owner to possess the property. *Estate of Miller v. Storey*, 2017 WI 99, ¶40, 378 Wis. 2d 358, 903 N.W.2d 759 (citing WIS JI—CIVIL 2200 (2014)). For several reasons, we agree with the Estate that the circuit court erred by granting Martin summary judgment on the Estate's conversion of personal property claim.

¶40 First, Martin does not argue on appeal that she undisputedly acted with the consent of the personal property owner or with the lawful authority to remove the personal property from the Farm. Indeed, the rightful owner of the personal property has yet to be determined. As noted earlier, the circuit court

---

[14] Martin also argues that the Estate has failed to develop a civil theft claim under WIS. STAT. § 895.446(1). We agree. The Estate's brief-in-chief primarily focuses on its conversion claim against Martin, and it does not reference § 895.446(1) or any legal authority related to civil theft. Although the Estate seems to suggest in its reply brief that a civil theft claim is supported by the evidence, it again fails to develop an argument supporting that proposition. Accordingly, we need not address this undeveloped argument. *See Pettit*, 171 Wis. 2d at 646-47.

expressly denied Portal Properties' motion for summary judgment on the Estate's claim regarding the ownership and disposition of the personal property. The court explained:

> there are enough material facts in dispute in the record by which I am going to have to put the ownership of personal property to the trier of fact to the jury in this case and see who, in fact, the title owner is and if there are any damages for the disposition of the personal property.

Thus, we cannot—nor could the circuit court—determine, as a matter of law, whether Martin acted with the consent of the personal property owner or whether the Estate could establish the second element of conversion.

¶41 Second, Martin's "belief that all of the personal property belonged to Gilbert … and/or Portal Properties" is not a defense to a conversion claim. Unlike a statutory civil theft claim, a conversion claim does not require that the "defendant knew that the owner did not consent." *Id.* (citation omitted); *see also* WIS JI—CIVIL 2200 (2014). "Thus, a person may be liable for conversion where the person has exercised control over property even though he or she may be unaware of the existence of the rights with which he or she interferes." *Methodist Manor Health Ctr. v. Py*, 2008 WI App 31, ¶14, 307 Wis. 2d 501, 746 N.W.2d 824 (citation omitted).

¶42 Third, the fact that Martin might have acted on behalf of Portal Properties or Gilbert is also not a defense to a conversion claim.

> Under well-established Wisconsin law, "an agent who does an act that would be a tort if he [or she] were not then acting as an agent for another is not relieved from liability to an injured third party, simply because he [or she] was acting as an agent when he [or she] caused the injury."

*Shister v. Patel*, 2009 WI App 163, ¶15, 322 Wis. 2d 222, 776 N.W.2d 632 (alterations in original) (quoting *Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*, 223 Wis. 2d 704, 715, 590 N.W.2d 1 (Ct. App. 1998)); *see also* RESTATEMENT (THIRD) OF AGENCY § 7.01 (AM. L. INST. 2006). Accordingly, Martin could be held liable even if she was acting on behalf of Portal Properties or Gilbert.

¶43 Fourth, a fact finder could reasonably find or infer that Martin "controlled" or "took" property belonging to the owner. *See Estate of Miller*, 378 Wis. 2d 358, ¶40. Again, it is undisputed that Martin removed personal property from the Farm "between November 2015 and the fall of 2016." In particular, McCaffery Jr. averred in his affidavit opposing Martin's motion for summary judgment that Martin removed firearms, computers and files. Although Martin appears to suggest that the first element of conversion cannot be established if she did not retain control of, or a benefit from, the property, the elements of a conversion claim do not impose those requirements. *See id.* Thus, a fact finder could find that by removing personal property from the Farm, Martin—for some period of time—"controlled" or "took" the property. *See id.*

¶44 Fifth, and finally, Martin does not argue on appeal that her conduct did not seriously interfere with the right of the owner to possess the personal property. *See id.* Although Martin points out that three guns were delivered to the Rusk County Sheriff's Office in June 2017—roughly one and one-half years after they were taken from the Farm—she does not argue or suggest that her involvement in removing the guns did not seriously interfere with the Estate's right to possess them. In the absence of any additional facts or argument, and viewing this evidence in the light most favorable to the Estate, a fact finder could reasonably find that Martin's removal of the guns seriously interfered with the

Estate's ability to possess them. Furthermore, Martin does not argue or suggest that her removal of other property, such as the computers and files, did not seriously interfere with the Estate's ability to possess that property.

¶45 In short, summary judgment should not have been granted on the Estate's conversion of personal property claim against Martin. The owner of the personal property has yet to be determined, and a fact finder could reasonably find or infer—based on the present record—that each element of a conversion claim has been met. We therefore reverse the circuit court's grant of summary judgment on this claim and remand for further proceedings.[15]

## IV. Claims against Aiken, Thayer, and the Sohpauls

¶46 Finally, the Estate argues that the circuit court improperly granted summary judgment in favor of Aiken, Thayer, and the Sohpauls—the subsequent owners of the Farm. The Estate contends that there are genuine issues of material fact regarding whether these parties had notice of the Estate's fraud claims when they purchased the Farm in 2018. Thus, the Estate asserts that it should be allowed to proceed on its claim, which seeks to "cancel[]" the deed that transferred the Farm to the subsequent owners.

---

[15] Martin argues in the alternative that we must affirm the grant of summary judgment because the Estate failed to include necessary and "indispensable parties" in this lawsuit. Martin observes that the Estate identified "numerous individuals" who "also removed personal property from the [Farm]" but were not named as defendants in the complaint. Martin, however, does not explain how these parties are necessary or indispensable to this lawsuit, nor does she cite any legal authority supporting her assertion that summary judgment could be granted based on the Estate's failure to include these parties in this lawsuit. Thus, we need not consider this undeveloped argument. *See Pettit*, 171 Wis. 2d at 646-47.

¶47 In response, the subsequent owners argue that the circuit court correctly granted summary judgment on the Estate's claim against them because the Estate's complaint failed to allege a fraud claim against any party. The subsequent owners therefore contend that the Estate cannot maintain its claim against them because that claim is predicated on the existence of fraud.

¶48 We agree with the subsequent owners of the Farm. The Estate's claim seeking to cancel the deed to the subsequent owners is based entirely on the fact that the subsequent owners were aware of the Estate's fraud claims before purchasing the Farm. Thus, to prevail on that claim, the Estate must first show that McCaffery Sr. was fraudulently induced into selling the Farm. For the reasons discussed above, however, the Estate has failed to plead a claim of fraud in the inducement with particularity against either Gilbert, Roxanne, or Portal Properties. As a result, it has also failed to state a claim upon which relief can be granted against the subsequent owners of the Farm. The circuit court therefore properly granted the subsequent owners' motion for summary judgment.

¶49 No costs awarded to any party.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

24