2023 WI 71

# SUPREME COURT OF WISCONSIN

NOTICE

**This order is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2023AP1412-OA

Stephen Joseph Wright, Gary Krenz, Sarah J. Hamilton, Jean-Luc Thiffeault, Somesh Jha, Joanne Kane, and Leah Dudley,

      Petitioners,

  v.

Wisconsin Elections Commission; Don Millis, Robert F. Spindell, Jr., Mark L. Thomsen, Ann S. Jacobs, Marge Bostelmann, Joseph J. Czarnezki, in their official capacities as Members of the Wisconsin Elections Commission; and Meagan Wolfe, in her official capacity as Administrator of the Wisconsin Elections Commission,

      Respondents.

**FILED**

**OCT 6, 2023**

Samuel A. Christensen
Clerk of Supreme Court
Madison, WI

---

The Court entered the following order on October 6, 2023:

On August 4, 2023, petitioners Stephen Joseph Wright, et al., seven Wisconsin voters, filed a petition for leave to commence an original action under Wis. Stat. § (Rule) 809.70, together with a supporting memorandum and an appendix.

On August 22, 2023, the named respondents in this matter, the Wisconsin Elections Commission, its members, and its administrator, filed a response taking no position on the merits of the petition.

On August 22, 2023, the Wisconsin Legislature filed a motion to intervene as a respondent. On September 5, 2023, the petitioners in this case filed a letter response stating that they

do not object to the intervention motion. No other response or opposition to the motion to intervene has been filed.

On August 22, 2023, the Wisconsin Legislature filed a motion for leave to file an amicus brief regarding the petition for original action. No response or opposition to this motion to file an amicus brief has been filed.

The court has considered the filings in this case. Accordingly,

IT IS ORDERED that the motion for leave to file a non-party brief, *amici curiae*, is granted, and the accompanying brief is accepted for filing;

IT IS FURTHER ORDERED that the petition for leave to commence an original action is denied; and

IT IS FURTHER ORDERED that the Wisconsin Legislature's motion to intervene is denied as moot.

ANNETTE KINGSLAND ZIEGLER, C.J. (*concurring*). This original action is nothing more than a motion for reconsideration of this court's decision in Johnson v. Wisconsin Elections Commission, 2022 WI 19, 401 Wis. 2d 198, 972 N.W.2d 559 ("Johnson III"), and appears to have been filed only because of a change in the court's membership. Where does this cycle end? Must this court also allow additional future parties to simply sit this litigation cycle out and come forward next court term—or after the next court election—and present already litigated claims again? What is to stop any party dissatisfied with the outcome here from carrying out challenges ad infinitum, each time from a slightly different angle, until their desired outcome is reached? This litigation chips away at the public's faith in the judiciary as an independent, impartial institution, undermines foundational judicial principles such as stare decisis, and casts a hyper-partisan shadow of judicial bias over the decisions of this court.

Today, my colleagues grant one original action petition and deny another. Specifically, four members of this court vote to grant Clarke v. Wisconsin Elections Commission, No. 2023AP1399-OA, and deny Wright v. Wisconsin Elections Commission, No. 2023AP1412-OA. I concur in Wright and dissent in Clarke because we should not accept either of these cases. Our court just decided redistricting last year in Johnson III. Redistricting should not be an annual event. Redistricting is a process that, under our

2

state constitution, is only supposed to occur once every decade.[1] However, redistricting was required by this court nearly two years ago because the Governor vetoed the maps drawn by the Legislature, creating an impasse. Absent court action, Wisconsin would have been in a constitutional crisis: Wisconsin would have had no maps in place to conduct state and federal elections. Thus, the court, as the final arbiter, was required to act. We clearly are not in that constitutional predicament today.

The congressional map selected by the court was submitted by Democrats, specifically Governor Evers. The state legislative maps ultimately selected by the court were submitted by Republicans, specifically the Wisconsin Legislature. However, the selection of the current state legislative maps occurred only after the United States Supreme Court summarily reversed my colleagues' original selection of Governor Evers' state legislative maps because the Governor's maps violated the Voting Rights Act. Johnson v. Wis. Elections Comm'n, 2022 WI 14, 400 Wis. 2d 626, 971 N.W.2d 402 ("Johnson II"), summarily rev'd sub. nom. Wis. Legislature v. Wis. Elections Comm'n, 595 U.S. 398 (2022) (per curiam). The issues presented in these original actions have already been decided by this court. The court, acting within its limited role to "answer legal questions," adopted maps that it decided were constitutional as a judicial remedy for an undisputedly unconstitutional situation (the previous district maps no longer matched the geographic distribution of Wisconsin's citizens). This judicial remedy of court-adopted maps stands for the next ten years, absent the enactment of new constitutionally compliant maps by the Legislature and the Governor.

I dissent to the order granting the original action petition filed in Clarke because it appears to be evidence of a partisan and political, rather than a reasoned and restrained, approach, and thus departs from the constitutional role of the judiciary. Some may prefer that other maps be drawn. And now, it seems, there is a pre-ordained plan to accomplish that goal. However, I urge my colleagues to exercise judicial restraint here rather than give in to the temptation to exercise raw, political, partisan power.

---

[1] "At its first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants." Wis. Const. art. IV, § 3.

In granting Clarke, four of my colleagues accept only two of the five issues presented.[2] Those same colleagues add two additional questions to the list of questions to be answered in briefing, two additional questions that are, at best, curious.[3] Why is this? We do not know. These orders are devoid of any stated rationale. Hiding their rationale from the public is far from being transparent and accountable. The Clarke petitioners presented these five issues:

1. Whether the state legislative redistricting plans proposed by the Legislature and imposed by this Court in [Johnson III], are extreme partisan gerrymanders that violate Article I, Section 1 of the Wisconsin Constitution's guarantee of equal protection under law; and whether this cause of action is justiciable in Wisconsin courts.

2. Whether the state legislative redistricting plans proposed by the Legislature and imposed by this Court in Johnson III are extreme partisan gerrymanders that retaliate against voters based on their viewpoint and exercise of free speech and abridge the ability of voters with disfavored political views to associate with

---

[2] The petitioners in Clarke and in Wright raise almost precisely the same issues and ask for precisely the same relief. Why not accept both cases, consolidate them, or hold one in abeyance? In certain respects, Wright has more complete pleadings.

[3] The court majority has added the following questions to be answered in briefing:

If the court rules that Wisconsin's existing state legislative maps violate the Wisconsin Constitution for either or both of these reasons and the legislature and the governor then fail to adopt state legislative maps that comply with the Wisconsin Constitution, what standards should guide the court in imposing a remedy for the constitutional violation(s)?; and

What fact-finding, if any, will be required if the court determines there is a constitutional violation based on the contiguity clauses and/or the separation of powers doctrine and the court is required to craft a remedy for the violation? If fact-finding will be required, what process should be used to resolve questions of fact?

4

others to advance their political beliefs in violation of Article I, Sections 3 and 4 of the Wisconsin Constitution; and whether these causes of action are justiciable in Wisconsin courts.

3. Whether the state legislative redistricting plans proposed by the Legislature and imposed by this Court in Johnson III are extreme partisan gerrymanders that fail to "adhere[] to justice, moderation, temperance, frugality, and virtue, . . . [and] fundamental principles" in violation of Article I, Section 22 of the Wisconsin Constitution; and whether this cause of action is justiciable in Wisconsin courts.

4. Whether the state legislative redistricting plans proposed by the Legislature and imposed by this Court in Johnson III violate the requirement of Article IV, Sections 4 and 5 of the Wisconsin Constitution that legislators be elected from districts consisting of "contiguous territory."

5. Whether the state legislative redistricting plans proposed by the Legislature and imposed by this Court in Johnson III violate the separation-of-powers principle inherent in the Constitution's division of legislative, executive, and judicial power by usurping the Governor's core constitutional power to veto legislation and the Legislature's core constitutional power to override such a veto.

Four members of this court seemingly attempt to evade several fatal flaws by accepting only two of the five issues presented, namely, the issues relating to contiguity and separation of powers. I suspect the court's focus will be on contiguity even though that issue was already considered and decided in the Johnson litigation. Johnson III, 401 Wis. 2d 198, ¶70 ("The Legislature has satisfied the remainder of Wisconsin's constitutional requirements. The assembly districts are contiguous and sufficiently compact."). Accepting this case primarily, if not solely on contiguity, leads one to conclude that four of my colleagues may already know the result they wish to obtain. Moreover, one of the issues added by the court has already been answered in the Johnson litigation with the court's unambiguous conclusion that the "least change" standard applies. Johnson v. Wis. Elections Comm'n, 2021 WI 87, ¶¶64-79, 399 Wis. 2d 623, 967 N.W.2d 469 ("Johnson I"). The second added issue regarding fact-finding is not needed for the questions of law presented in the two accepted issues, but if fact-finding were somehow necessary, which is quite unclear, we are not a fact-

5

finding court. The decision to accept the original action petition in Clarke is a travesty which disregards our very recently decided Johnson litigation and completely ignores longstanding, sound legal principles and the precedent that binds the court.

Do my colleagues refuse to accept the other issues or the petition in Wright because they know this court has already decided these matters? Or is it because most of the petitioners in Wright were allowed to intervene in the Johnson litigation? Typically, this court accepts all issues for review before determining which of those issues are necessary to resolve the case. I suspect my four colleagues may have tried to narrow the issues at the outset to be able to better achieve the pre-determined outcome they desire. But will the remedy they seek invoke the other issues not accepted for review, missing the benefit of briefing or argument? Petitioners appear to be raising the contiguity argument as a means to indirectly re-litigate the already litigated and decided issues of political fairness and political gerrymandering. But, the four in the majority did not accept those issues so they are not before the court. This court is asked to consider "partisan fairness" in overturning the current apportionment maps, as the parties claim that "the current legislative maps are extreme partisan gerrymanders." But these issues are not before the court, and this court already addressed the issue of partisan fairness in Johnson I, determining that it was not the court's role to answer political questions such as claims of partisan fairness, but only to answer "legal" questions such as whether the proposed maps "satisfy all constitutional and statutory requirements". Johnson I, 399 Wis. 2d 623, ¶4. As these issues have already been expressly decided, we should not be resolving them again here.

Perhaps another answer why four members of this court would limit its selection of issues to contiguity and separation of powers could be an attempt to dodge appellate review. When four members of the judicial branch decide they also serve as members of the legislative and executive branches, should they not at least subject themselves to further appellate scrutiny? Yet, the limited issues the four justices accept seem to seek evasion of any such scrutiny. However, any remedy imposed might nonetheless be subject to review. Typically, we take all the issues presented even if the court does not need to decide them because at its inception, we do not know the matter well enough. We need extensive legal research, briefing and argument. This time around seems different: it seems the four justices find that standard procedure unnecessary, as they already appear to know they do not need to fully research and hear all of the issues and arguments presented. Instead, it seems the four justices only accept the

two questions of law in order to avoid having the case proceed through traditional fact finding at the trial court.

Notably, these justices vociferously dissented when the court decided Johnson III, a redistricting action, last year. They primarily objected because there was no fact-finding. Johnson III, 401 Wis. 2d 198, ¶161 (Karofsky, J., dissenting). This case, with all of its issues, could have proceeded and facts could have been fully developed in the courts below, but since it now appears that they have changed their view and abandoned their objection once they became a majority of the court, perhaps a thorough process is not what they now desire. It is worth wondering whether this case would withstand a full vetting based upon developed facts and law. Unlike the Johnson litigation, where the court was required to act within a short time frame and remedy a constitutional violation by adopting new maps, these original actions do not pose a situation where the state is without constitutionally compliant maps absent court action. There is no urgency to act with such haste and without a thorough vetting. It is also not urgent to act before the Legislature has decided whether they should proceed with implementing a plan which mirrors Iowa's.[4] Why does the court wish to act with such haste when the Constitution clearly vests redistricting powers within the province of the Legislature and Governor? This hastiness also portends that this case is decided almost before it has begun.

All of this question-raising behavior seems to demonstrate not prudential judicial reasoning, but rather a sheer will to expedite a preconceived determination to ensure that all maps are favorable to a particular constituency. When a court already knows the answer, the procedures in advance of that decision are nothing more than judicial window dressing. This order seems to bear the hallmarks of just that.

Far from being "judicial window-dressing," the court's reliance on foundational legal principles also supports the fact

---

[4] Claire Reid, Robin Vos proposed 'Iowa-style' redistricting for Wisconsin. What does that mean? Milwaukee Journal Sentinel, (Sept. 13, 2023); https://www.jsonline.com/story/news/politics/2023/09/13/wisconsin-redistricting-what-is-iowa-style-model-proposed-by-vos/70840624007/; Andrew Bahl, Is Iowa-style redistricting in Wisconsin's future? The Cap Times, (Sept. 13, 2023), https://captimes.com/news/is-iowa-style-redistricting-in-wisconsin-s-future/article_49c8e042-526f-11ee-ad2f-2fdd42d8bb17.html

that both petitions should be denied because the Johnson III decision is the law. Under the doctrines of stare decisis,[5] issue preclusion,[6] claim preclusion,[7] and the law of the case,[8] the Johnson III decision stands. Cases that have been decided with finality are not re-litigated. During the Johnson litigation addressing this issue of redistricting maps, we liberally permitted any and all parties to intervene in the case. We then

---

[5] The doctrine of stare decisis bars parties from seeking to overrule recently decided cases such as Johnson III. See State v. Alan Johnson, 2023 WI 39, ¶19, 407 Wis. 2d 195, 990 N.W.2d 174 ("[W]e require a special justification in order to overturn our precedent."); Hinrichs v. DOW Chemical Co., 2020 WI 2, ¶¶66-67, 389 Wis. 2d 669, 937 N.W.2d 37 ("Second, the doctrine of stare decisis militates against the precipitous change in the law that Dow seeks. Stare decisis is fundamental to the rule of law. Indeed, '[t]his court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law.' 'Fidelity to precedent ensures that existing law will not be abandoned lightly. When existing law is open to revision in every case, deciding cases becomes a mere exercise in judicial will, with arbitrary and unpredictable results.' Accordingly, any departure from stare decisis requires 'special justification.'" (citations and footnotes omitted)).

[6] The doctrine of issue preclusion clearly bars the parties from re-litigating what was already decided in the Johnson litigation. See Aldrich v. LIRC, 2012 WI 53, ¶88, 341 Wis. 2d 36, 814 N.W.2d 433 ("The doctrine of issue preclusion . . . is designed to limit the re-litigation of issues that have been actually litigated in a previous action.")

[7] The doctrine of claim preclusion bars parties from bringing claims now which could have been brought in the Johnson litigation. See Dostal v. Strand, 2023 WI 6, ¶24, 405 Wis. 2d 572, 948 N.W.2d 382 ("[C]laim preclusion . . . extends to all claims that either were or could have been asserted in the previous case.").

[8] The doctrine of law of the case, in the interest of there being finality in court decisions, binds the parties in any subsequent retrial or appeal involving the same case and substantially the same facts as was addressed in the Johnson litigation. See State v. Moeck, 2005 WI 57, ¶18, 280 Wis. 2d 277, 695 N.W.2d 783 (The law of the case doctrine is a "longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.").

8

"granted intervention to all parties that sought it." Johnson II, 400 Wis. 2d 626, ¶2. While the respondents were parties to the previous litigation, the Clarke petitioners apparently chose not to participate or at a minimum made no attempt to formally do so.[9] The law requires them to live with that decision. Reframing arguments or attempting new fact-finding nonexistent in the previous litigation but involving the same maps should not be allowed to prevail. Were that an acceptable tactic, there would be no finality in the law or litigation. "If at first you don't succeed, try, try again" may be a good maxim for children, but that has never been the case for fully vetted, fully litigated and decided cases. If these parties believed that these considerations were fundamental to map determinations, the time for participation was during the Johnson litigation. That time has now passed. This

---

[9] Notably, although the Clarke petitioners were not themselves parties in the Johnson litigation, they are represented in this case by many of the same law firms and lawyers who represented other parties in Johnson. Specifically, Black Leaders Organizing for Communities, Voces de la Frontera, League of Women Voters of Wisconsin, Cindy Fallona, Lauren Stephenson, and Rebecca Alwin were parties in the Johnson litigation and were represented by Law Forward, Inc.; Stafford Rosenbaum LLP; and the Campaign Legal Center. Those same law firms, with only the addition of a few additional out-of-state lawyers, now represent the petitioners in the Clarke case, creating the appearance that the lawyers have simply substituted a new group of parties to continue the redistricting litigation they could not resolve to their satisfaction in the Johnson litigation.

In addition, the seven Wright petitioners include five individuals who already participated in the Johnson litigation as parties—a group referred to in the Johnson decisions as the "Citizen Mathematicians and Scientists": Stephen Joseph Wright (Chair of the Department of Computer Sciences at the University Wisconsin-Madison); Gary Krenz (Professor Emeritus of Mathematical and Statistical Sciences and Adjunct Professor of Computer Science at Marquette University); Sarah J. Hamilton (Associate Professor of Mathematics at Marquette University and an Assistant Adjunct Professor at the Medical College of Wisconsin); Jean-Luc Thiffeault (Chair of the Department of Mathematics and a Professor of Applied Mathematics at the University Wisconsin-Madison); and Somesh Jha (Professor of Computer Sciences at the University Wisconsin-Madison). The Wright petitioners are represented by the same attorneys who represented the Citizen Mathematicians and Scientists in the Johnson litigation.

court should not re-litigate the exact same maps one year later, with no intervening change in the law or facts presented. At most, we see a motion for reconsideration; but in this case, such a motion is long since time barred. Wis. Stat. § (Rule) 809.64 ("A party may seek reconsideration of the judgment or opinion of the supreme court by filing a motion under s. 809.14 for reconsideration within 20 days after the date of the decision of the supreme court."). There is no other legal basis or procedural mechanism for this court to once again re-examine these maps.

Moreover, the petitioners' claim that the court's decision in Johnson III violated separation of powers does not seem to warrant serious review. In the Johnson litigation, there had to be new redistricting maps; the maps enacted following the 2010 census were undeniably unconstitutional following the 2020 United States Census. The Legislature and the Governor, the branches constitutionally responsible for redistricting, exercised their constitutional authority in a way that resulted in an impasse. Since the impasse meant that there was a lack of constitutionally required maps in place prior to holding the next partisan election, the judicial branch was forced to intervene, albeit in a limited fashion. We were forced to proceed with a judicial proceeding in the Johnson litigation to select constitutionally compliant maps as a remedy for the ongoing constitutional violation.

It will be interesting to see how the separation-of-powers argument is presented. Seemingly, the argument is that by adopting legislative maps submitted by one party (i.e., the Legislature), this court violated the separation of powers because the Governor had previously vetoed those maps as part of the legislative process. Would not the argument that the court violated the separation of powers by "judicially overriding" the Governor's veto of those maps also require finding that this court violated separation of powers by choosing the Governor's proposed congressional maps over the Legislature's proposed congressional maps? Why does that scenario not also infringe on the Legislature's constitutional authority to enact new district maps? Indeed, the congressional maps proposed by the Governor and adopted by this court in Johnson II are still in effect. If the petitioners' separation-of-powers claims have legal merit, should we also be reviewing the Governor's congressional maps to address that same violation? We shall see. My guess is that the majority will not say much about separation of powers.

The petitioners advance the proposition that Clarke raises issues no different than cases recently decided from other states. No other state in the nation is doing or has done what the petitioners ask this court to do. None of those cases align with

10

the procedural posture of the Johnson litigation and this new case. None of the other state cases the parties cited[10] involve asking a state supreme court to reconsider maps that court adopted as constitutional just one year prior. Moreover, Wisconsin, unlike the states upon which the parties rely, constitutionally vests both its legislature and its governor with the constitutional duty to determine redistricting.[11] Wisconsin's unique procedural events

---

[10] Szeliga v. Lamone, C-02-CV-21-001816, 2022 WL 2132194 (Md. Cir. Ct. Mar. 25, 2022); League of Women Voters of Utah v. Utah Legislature, No. 220901712 (Utah 3d Dist. Ct. Nov. 22, 2022); Republican Party of New Mexico v. Oliver, No. S-1-SC-39481 (N.M. July 5, 2023); Avalos v. Davidson, No. 01CV2897, 2002 WL 1895406 (D. Colo. Jan. 25, 2002); Balderas v. Texas, No. 6:01CV158, 2001 WL 36403750 (E.D. Tex. 2001).

[11] In the states the parties cited to, the individuals constitutionally responsible for redistricting are: Maryland: the governor (M.D. Const. art. III, §V); Utah: Utah Legislative Redistricting Committee and the Utah Independent Redistricting Commission (Utah Const. art. IX, §1); New Mexico: the legislature (N.M. Const. art. VI, § 16); Colorado: independent commission as of 2018 (Colo. Const. art. V, §§ 44-48); and Texas: the legislature, and if they fail to do so, the legislative redistricting board (Tex. Const. art. III, §28).

11

in the Johnson litigation have not been replicated in these other states.[12]

All of these factors, when considered together, seem to lead to the reasonable conclusion that accepting this original action is a purely political action to achieve a desired outcome. Despite this court having just declared that the existing maps are constitutional, four members of this court nonetheless accept the original action petition in Clarke. At the same time, four members of this court attempt to evade judicial review by selecting only two of the five issues presented. These are questions of law, yet those justices nonetheless inquire about fact finding and also ask a question which telegraphs that they are poised to overturn the "least change" determination made in Johnson I. 399 Wis. 2d 623, ¶¶64-79. Despite this evasive framing of the case, Caperton

---

[12] In Maryland, the suit challenged a legislative-drawn map enacted over gubernatorial veto: the court ordered the legislature to adopt a revised map, which the legislature did, and which the governor then subsequently signed into law. In Utah, the suit arose after the legislature adopted its own map over the three maps created and proposed by the Independent Redistricting Committee: the trial court declined to dismiss the plaintiff's partisan gerrymandering claims and the Utah State Supreme Court heard oral arguments in July 2023. The New Mexico Supreme Court, unlike the Wisconsin Supreme Court, determined that partisan gerrymandering claims were in fact justiciable. Whereas the Wisconsin Supreme Court adopted a map following a political impasse between its legislature and governor, in Colorado, the State District Court drew its own congressional map following the General Assembly's failure to pass a congressional redistricting plan in time for the 2002 elections. After the Republican-led legislature attempted to replace that court-drawn map, the Colorado Supreme Court ruled that the constitution allowed only one round of congressional redistricting after each 10-year census. And finally, in Texas, after the state failed to produce a congressional redistricting plan, the federal district court drew its own redistricting plan according to various neutral districting factors. In none of these other states did their state supreme court draw the maps or overturn maps which they had adopted as a judicial remedy a year prior. See supra n.10.

12

nonetheless looms large and will remain a cloud over this outwardly handpicked, predetermined, and preordained litigation.[13]

Finally, the Wisconsin Elections Commission does not seem to be a party that is taking a position. The petitioners' requested remedy affects 17 senators in odd-numbered districts. These senators are named parties in Clarke. But each Senate district has within it three Assembly seats, so there are potentially far-reaching ramifications for seats in the Assembly. Why not name those in the Assembly as well? If the result of the Johnson III maps being declared unconstitutional is that senators in odd-numbered districts lack authority to hold their seats, then does the same lack of authority apply to members of the Assembly?

Upon closer inspection, this original action appears to be nothing more than a thinly-veiled motion for reconsideration of this court's decision in Johnson III. This court should not accept the petition in Clarke. In granting the petition in Clarke, four members of this court have chosen to chip away at the public's faith in the judiciary as an independent impartial institution, undermine foundational judicial principles such as stare decisis, and cast a hyper-partisan shadow of judicial bias over the decisions of this court. Such short-sighted behavior demonstrates the court majority's sheer will to expedite a preconceived outcome for a particular constituency. This abandonment of their judicial oath is disappointing. I concur.

I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

---

[13] The public's faith in the judiciary as an independent, impartial institution is upended when parties are allowed to "[pick] the judge in [their] own case." Williams v. Pennsylvania, 579 U.S. 1, 8-9 (2016). Where parties are allowed to pick who presides over their cases, a specter of judicial bias violates parties' due process rights and invalidates the outcome. Parties can give the impression that they have impermissibly "picked the judge in their own case" through donating overwhelmingly to the campaign of a judge they hope to have preside over their case. See Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

13